No. 03-1155 T
(The Honorable Lawrence J. Block)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE COCA-COLA COMPANY & SUBSIDIARIES,

Plaintiffs

v.

THE UNITED STATES,

Defendant

# BRIEF FOR THE UNITED STATES IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
W.C. RAPP
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0503
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

Page

Brief for the United States in Support of its Cross-motion for Summary Judgment, And in Opposition to Plaintiff's Motion for Summary Judgment. . . . . . . . . . . . . . . . . 1

Question presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statutes and regulations involved. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preliminary Statement:

The statutory framework.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument:

1. The overpayment of tax in the amount of $18,682,973 that was refunded to plaintiff on September 27, 1985, was paid within 45 days of the filing by plaintiff of a claim for its refund. Accordingly, the requirements of section 6611(e) being satisfied, it was properly paid without interest, contrary to plaintiff's contention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

2. Plaintiff does not claim additional interest with respect to the over-payment upon which this Court's jurisdiction is based, while the Court is without jurisdiction over the overpayment with respect to which plaintiff claims additional interest. . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Appendix A:

Internal Revenue Code of 1954 (26 U.S.C.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Treasury Regulations (26 (C.F.R.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. 219, 454 F.2d 1379 (1972). . . . . . . . . 14

*Angarica v. Bayard*, 127 U.S. 251 (1888). . . . . . . . . 10

*Computervision Corp. v. United States*, 62 Fed Cl. 299 (2004), *aff'd* 445 F.3d 1355 (Fed. Cir. 2006), *rehearing and rehearing en banc denied*, ___ F.3d ___, 2006 WL 2505690 (2006). . . . . . . . . 14

*General Instrument Corp. v. United States*, 33 Fed Cl. 4 (1995). . . . . . . . . 14, 16

*Library of Congress v. Shaw*, 478 U.S. 310 (1986). . . . . . . . . 3, 10

*Marsh & McLennan Co., Inc. v. United States*, 302 F.3d 1369 (Fed. Cir. 2002). . . . . . . . . 3, 15

*Mobil Corp. v. United States*, 52 Fed Cl. 327 (Fed. Cl. 2002). . . . . . . . . 14

*Owens-Corning Fiberglas Corp. v. United States*, 462 F.2d 1139, 199 Ct. Cl. 61 (1972). . . . . . . . . 4

*Pacific Gas & Electric Co. v. United States*, 417 F.3d 1375 (Fed. Cir. 2005), *reversing* 55 Fed. Cl. 271 (2003). . . . . . . . . 15

*Rosenman v. United States*, 323 U.S. 658 (1945). . . . . . . . . 3, 10

*Soo Line Railroad Co. v. United States*, 44 Fed Cl. 760 (1999). . . . . . . . . 10-13, 16

**Page**

**Statutes:**

Internal Revenue Code of 1954 (26 U.S.C.):

§ 27.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 33.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 38.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 38 thru 45. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 46 thru 48. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 172.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
§ 904.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
§ 6012.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6072.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6151.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6402.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18
§ 6513.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 18
§ 6611.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-5, 9, 12, 15, 19
§ 7422.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 21

28 U.S.C.:

§ 1491.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 2401.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
§ 2501.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

**Miscellaneous:**

Treasury Regulations (26 C.F.R.):

§ 301.6402-3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 23
§ 301.6611-1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE COCA-COLA COMPANY & SUBSIDIARIES,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 03-1155 T** |
| | ) | **The Honorable Lawrence J. Block** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**BRIEF FOR THE UNITED STATES**
**IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT,**
**AND IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

This is a suit brought pursuant to the Tucker Act which presents a claim against the United States founded upon an Act of Congress seeking the payment of additional interest on an overpayment of tax paid to plaintiff (via credit) on or about May 25, 1997.

QUESTION PRESENTED

Whether plaintiff is entitled to overpayment interest between March 15, 1985, and September 27, 1985, on an overpayment of tax refunded to plaintiff on September 27, 1985.

STATUTES AND REGULATIONS INVOLVED

The relevant provisions of the Internal Revenue Code and Treasury Regulations are included in the Appendix, *infra*.

PRELIMINARY STATEMENT:
The Statutory Framework

In the instant case it would be unwise to commence with a straightforward setting out of the material facts. Such a recitation would be difficult to understand without a preliminary explanation of certain legal concepts and terms. These include carryovers, the definition of an overpayment, and a few basic (if not necessarily simple) rules respecting interest on overpayments of taxes. None of those rules is in dispute, and we describe them as follows.

Congress determined that the task of calculating a taxpayer's liability for a given year will not always depend only on events and transactions with respect to that year. Rather, the Internal Revenue Code includes provisions involving "carrybacks" and "carryovers" that permit the reduction of tax for one year as the consequence of transactions and events that occurred in later or in earlier tax years. This does not involve the application of an overpayment of tax from one year against a liability for tax in another (which we touch upon below), but in the utilization of tax attributes generated in one year to reduce a taxpayer's taxes for a different year. Section 172 permits the deduction in one year of "net operating loss" carrybacks from later years. [1/] Thus, a net operating loss from a later year may be used to reduce taxable income for a prior year. In addition, various tax credits [2/] that cannot be used in the year which generates them may be carried back and applied against the tax liability of a prior year. These include the investment tax

---

[1/] A "net operating loss" is defined as an excess of business deductions (with certain modifications) over gross income for a particular tax year. § 172(c).

[2/] Credits are amounts which reduce tax liability on a dollar-for-dollar basis, while deductions are amounts which reduce net income that is subject to tax at the applicable rate.

credit, [3/] the credit for foreign tax paid, [4/] and others. Application of a carryback will always reduce a taxpayer's tax liability, and will normally generate an overpayment of tax.

An overpayment of tax occurs with the first payment that, when added to all prior payments, results in a total exceeding the taxpayer's tax liability. The date of an overpayment is "the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability . . . and the dates of payment of all amounts subsequently paid . . . ." Treas. Reg. § 301.6611-1(b). Thus, where a taxpayer's liability is $150, and he has made three $100 payments on Date 1, Date 2 and Date 3, an overpayment of $50 arises on Date 2, and an additional overpayment of $100 (for a total overpayment of $150) arises on Date 3.

The imposition of interest to be paid by the Government is not favored, and is never imposed by implication, in the absence of a clear and unmistakable command to do so. *Rosenman v. United States*, 323 U.S. 658, 663 (1945); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986). Thus, interest is not payable to a taxpayer simply because the Government has in its hands money that belongs to that taxpayer. The Internal Revenue Code does provide that, in general, interest on an overpayment of tax is payable from the date on which the overpayment arises, until the overpayment is refunded or, if the overpayment is credited against another tax owed by the taxpayer, then through the due date of the return for the tax against which it is credited. § 6611(a) - (b); *Marsh & McLennan Companies, Inc. v. United States*, 302 F.3d 1369

---

[3/] The investment tax credit is allowed by section 38, is computed and carried back or forward by sections 46 through 48 of the Code as in effect during the years in suit, and is currently governed by sections 38 through 45.

[4/] The foreign tax credit is allowed by section 33, is carried back by section 904(c) – (e) of the Code as in effect during the years in suit, and is currently governed by sections 27 and 904(c).

(Fed. Cir. 2002). This general notion, however, is subject to many exceptions, adjustments and modifications. Some remittances made by taxpayers are not "payments" and thus bear no interest in the first instance. (*See, e.g.*, §§ 6513(a) & (b) and 6611(d), regarding advance payments of tax (that is, estimated tax payments).) And not all overpayments of tax bear interest. There is no interest on an overpayment until a return ("in processible form") is filed. 6611(b)(3) & (g). Where an overpayment is applied as an estimated tax payment to the next tax year, no interest will be paid. See § 6402(b); Treas. Reg. § 301.6402-3(b)(5); *Owens-Corning Fiberglas Corp. v. United States*, 462 F.2d 1139, 199 Ct. Cl. 61 (1972). Two such complicating provisions are relevant to the case at bar:

First, if an overpayment of tax results from a carryback of a credit or a net operating loss, the overpayment is deemed not to have arisen prior to the filing date for the taxable year in which the net operating loss or the credits arise. § 6611(f). Thus, for example, an overpayment of tax resulting from the carryback of a credit arising in 1983, carried back to reduce a calendar-year corporate taxpayer's liability with respect to 1981, would not begin to accrue overpayment interest until, at the earliest, March 15, 1984, the due date for a corporate taxpayer's return for 1983 (§§ 6012(a)(2); 6072(b)), which is also the due date for the payment of tax for 1983 (§ 6151(a)).

Second, and central to the instant case, is § 6611(e), which provides that when an overpayment is refunded to a taxpayer within 45 days of the date on which he files his return, then no interest is payable. Thus, a taxpayer reporting and requesting the refund of an

overpayment will be given his refund without interest if it is paid to him within 45 days. [5/] The statute applies this rule with respect to overpayments generated by carrybacks by commanding that an overpayment refunded within 45 days of the filing of a taxpayer's claim for it shall be paid with no interest. [6/]

These principles provide the legal context in which the facts of this case can now be stated.

STATEMENT

Taxpayer timely (pursuant to an extension) filed its return with respect to calendar 1981 on or about September 13, 1982. Defendant's Proposed Findings of Uncontroverted Fact, filed this day (hereafter "DPFF"), ¶ 1. The return reported a tax liability of just over $89 million, not all of which had been paid when due, on March 15, 1982. DPFF ¶ 2. After various adjustments and payments, the account balance became zero in April of 1984. DPFF ¶ 3.

In November 1984, taxpayer filed a Form 1139, "Corporation Application for a Tentative Refund," seeking a refund of $7.6 million for 1981, based on carrybacks from 1983. DPFF ¶ 4. This refund was paid within 45 days of the date of the claim, without interest. DPFF ¶ 5. In

---

[5/] Related provisions (not directly relevant) reduce by 45 days the period for which overpayment interest runs if the Internal Revenue Service, without a claim for refund, initiates an adjustment which results in an overpayment on which overpayment interest is due (§ 6611(e)(3)), and prohibit interest for the period after the filing of an ordinary claim for refund, where the refund is paid within 45 days of the filing of the claim (§ 6611(e)(2)).

[6/] The statute does not include a provision, in declarative terms, prohibiting interest generated by a carryback where the refund is made within 45 days of the claim therefor. Instead, the mechanism employed by the statute is that for purposes of this 45-day interest-free rule, an overpayment resulting from a carryback is treated as an overpayment for the loss year (that is, the year in which there was a net operating loss, or an excess of credits, which net operating loss or credits are carried back to a prior year), and to deem the return for the loss year not to have been filed before the claim for the overpayment is itself filed. § 6611(f)(4)(B)(ii)(I)-(III).

January 1985, taxpayer sought a second carryback refund of $1.1 million for 1981, based on carrybacks from 1984. DPFF ¶ 6. This refund was also paid within 45 days of the claim, hence also without interest. DPFF ¶ 7. Plaintiff does not contend that interest was payable on either of these refunds when they were made, and plaintiff does not contend that any subsequent events change the correctness of that treatment.

On September 16, 1985, plaintiff filed a third Form 1139 with respect to 1981, this time seeking a refund of $18.68 million, generated by additional carrybacks to 1981 from 1984. DPFF ¶ 8. This refund was paid on September 27, 1985, within 45 days of the filing of the claim, and accordingly was paid without interest. DPFF ¶ 9. Plaintiff does not contend that interest was payable on this refund at the time it was made. In the instant suit, however, plaintiff contends that in computing interest on an overpayment paid to plaintiff twelve years later in 1997 (paid via a crediting of the overpayment against a tax deficiency with respect to 1982), interest should be paid on part of the overpayment created by this last carryback claim, which had been promptly paid in 1985 within 45 days of plaintiff's claim for its refund.

The 1997 overpayment arose as follows. Coca-Cola's 1981 taxes had been under audit since June of 1983. DPFF ¶ 10. In October of 1987, the Internal Revenue Service assessed a tax deficiency of $8.2 million, along with deficiency interest of $7.8 million, for a total deficiency just shy of $16 million. DPFF ¶ 11. The deficiency consisted of a general adjustment [7/] increasing plaintiff's 1981 tax, and allowance of an additional carryback to 1981 from 1982,

[7/] General adjustments are those that relate to the return as originally filed rather than to carryback items. That is, plaintiff's tax liability for 1981 was increased based on facts having to do directly with 1981, which generated plaintiff's original liability.

decreasing plaintiff's 1981 tax. DPFF ¶ 12. The net tax deficiency and the deficiency interest were paid by plaintiff on October 27, 1987. DPFF ¶ 13.

In January of 1990, the Commissioner commenced an audit of plaintiff's 1981 tax liability which reviewed, among other things, the amount and correctness of the carrybacks from 1984 to 1981. DPFF ¶ 14. The examination resulted in a net tax assessment with respect to 1981 (*i.e.*, a determination that plaintiff owed more tax, that there was a tax deficiency) of $9.77 million, which was comprised of three parts. First, there was a reduction in the amount of the carryback allowed to 1981 from 1984, resulting in a tax *increase* of $12,448,079. [8/] Second, there was a general adjustment *reducing* plaintiff's tax liability. Third, there was an increase in the amount of the carryback allowed from 1983 to 1981, resulting in a tax *decrease*. DPFF ¶ 15. The net tax deficiency, along with deficiency interest of $3.8 million, was assessed on January 23, 1991. DPFF ¶ 16. The deficiency was satisfied by transferring into the account an overpayment credit from 1980 in the amount of about $986,000, another overpayment credit from 1980 of about $712,000 (which amounts had been paid on October 27, 1987), and an overpayment credit from 1984 in the amount of $11.9 million (representing amounts which had been paid on March 15, 1990). DPFF ¶ 17. These last two amounts ($712,000, originally paid with respect to 1980, and $11.9 million, originally paid with respect to 1984) would later be transferred out of the account (and applied to plaintiff's tax liability for 1982) when the Service's deficiency assessment was largely reversed, as discussed below. DPFF ¶ 17. That is, the

---

[8/] When a carryback that has previously been allowed is reversed, in whole or in part, it is said that the carryback has been "recaptured" to the extent of the disallowance.

overpayment finally paid to plaintiff in 1997 consisted of these payments, made several years after the refund with respect to which plaintiff claims interest has been erroneously computed.

While direct review of Coca-Cola's 1981 taxes was now complete, the Commissioner continued to examine other years, adjustments to which would change plaintiff's 1981 liability. On May 30, 1991, the Commissioner issued a Notice of Deficiency with respect to plaintiff's taxes for 1981, 1983 and 1984. DPFF ¶ 18. The Notice proposed various substantive adjustments to plaintiff's taxes for 1983 and 1984, and affected the year in issue, 1981, only insofar as those adjustments to 1984 reduced carrybacks that plaintiff had claimed (and had previously been allowed) from 1984 to 1981. DPFF ¶ 19. As a result of the reduced carrybacks, the Notice proposed a deficiency in tax with respect to 1981 in the amount of $6.2 million. DPFF ¶ 20. Taxpayer filed a petition for a redetermination with the United States Tax Court.

The resolution of the dispute over taxpayer's 1981 income tax was embodied in a stipulated decision of the Tax Court, dated January 2, 1997, which determined that there was an overpayment of tax with respect to 1981 in the amount of $12,352,648, which had been paid by the taxpayer on October 27, 1987, and March 15, 1990 (the dates of the payments of the amounts that had been transferred to plaintiff's 1981 account as credits from 1980 and 1984, referred to above, used to satisfy the deficiency that had been assessed in January 1991). DPFF ¶ 22. The overpayment resulted entirely from the reversal of virtually all of the carryback recapture. DPFF ¶ 23. That is, taxpayer originally claimed (and in September, 1985, was allowed a prompt refund of) $18.68 million as the result of carrybacks from 1984 to 1981. DPFF ¶ 24. The Service later disallowed ("recaptured") $12,448,079 of that amount. DPFF ¶ 25. Ultimately, taxpayer and the Commissioner agreed that the correct amount of the carryback was $18.59 million (instead of

$18.68 million, a difference of less than $100,000) and that the Commissioner's recapture of $12,448,079 of that carryback was therefore in error to the extent of $12,352,648 (again, of course, a difference of less than $100,000), resulting in an overpayment in that amount. DPFF ¶ 26. This adjustment also resulted in the abatement of previously assessed deficiency interest paid by the taxpayer in the amount of $5.5 million, for a total overpayment of $17.88 million. DPFF ¶ 27. The overpayment was applied as a credit against plaintiff's 1982 corporate income tax liability on or about May 25, 1997. DPFF ¶ 28. This suit followed on May 6, 2003.

ARGUMENT

1. The overpayment of tax in the amount of $18,682,973 that was refunded to plaintiff on September 27, 1985, was paid within 45 days of the filing by plaintiff of a claim for its refund. Accordingly, the requirements of section 6611(e) being satisfied, it was properly paid without interest, contrary to plaintiff's contention.

In this suit plaintiff demands that the Government pay interest between March 15, 1985 (the due date of its 1984 return), and September 27, 1985, on an overpayment of Coca Cola's federal corporate income tax for 1981, refunded to plaintiff on that latter date. It is undisputed that the overpayment was refunded in response to plaintiff's claim of a carryback from 1984 to 1981. It is undisputed that the refund was made within 45 days of the claim, filed September 16, 1985. And it is undisputed that § 6611(e) of the Internal Revenue Code commands that such promptly-refunded overpayments bear no interest.

Plaintiff contends that the undisputed facts respecting this refund are to be disregarded because of later events. Specifically, plaintiff points to the fact that the Commissioner later concluded that the carryback (and hence the refund) should not have been allowed, before finally agreeing with plaintiff that virtually all of the carryback (and hence the refund) had been proper.

But these latter events in no way change the facts upon which the operation of the statute relies: Plaintiff was paid a refund within 45 days of requesting it. The statute looks to this – and only this – in commanding that no interest should run against the Government. Before these subsequent events, plaintiff had claimed a refund based on a carryback from 1984, which refund the Internal Revenue Service paid within 45 days. At the end of the day, plaintiff had been paid a refund based on a carryback from 1984, which refund had been paid within 45 days.

Significantly, plaintiff is unable to point to any statutory provision which supports its claim. But interest is entirely a creature of statute, and interest against the Government is not favored, and is not to be awarded in the absence of a clear command to do so. *Angarica v. Bayard*, 127 U.S. 251, 260 (1888); *Rosenman v. United States*, 323 U.S. 658, 663 (1945); *Library of Congress v. Shaw*, 478 U.S. 310, 314-318 (1986). Thus, plaintiff's inability to mount a statutory argument is fatal.

*Soo Line Railroad Company v. United States*, 44 Fed. Cl. 760 (1999), decides the precise question presented by this case, on facts indistinguishable from those of the case at bar. In that case, involving the tax year 1980, *Soo Line* filed a Form 1139, claiming entitlement to a refund of $2.86 million based on a net operating loss carryback to 1980 from 1983. The Commissioner paid the refund, without interest, on October 12, 1984, within 45 days of the date of the claim, which had been filed September 20, 1984. Plaintiff in that case later petitioned the Tax Court to review other proposed adjustments to its 1980 taxes, and ultimately reached a settlement with the Government, embodied in a stipulated decision. One term of the settlement and decision was the determination that the net operating loss carryback from 1983 to 1980 should have been $5.676 million, rather than the $2.86 million originally claimed by Soo Line. Another was that

plaintiff's tax liability was actually greater than the taxpayer had claimed, so that rather than the overpayment of $2.86 million that had been refunded to that taxpayer on October 12, 1984, there had been an overpayment of only $2.4 million.

Before this court, Soo Line claimed that it was entitled to overpayment interest on the amount refunded to it on October 12, 1984, despite it having been made within 45 days of that taxpayer's claim (44 Fed. Cl. at 762-63; footnote omitted):

> Plaintiff argues that the limitation on interest provided for under section 6611(e) does not apply here, however, because plaintiff never made a claim for a tentative allowance based on the IRS-determined corrected amount of $5,676,358. While plaintiff acknowledges that the IRS properly subtracted the $3,260,582 underpayment from the corrected NOL, plaintiff claims that it is entitled to interest on the $2,415,775.72 difference. According to plaintiff, the fact that it previously received a tentative allowance of $2,860,785 based on a mistaken NOL carryback does not interfere with its right to interest on the IRS-corrected amount. In plaintiff's view, section 6611(f)(3)(B) applies only when the taxpayer seeks a tentative allowance; it does not apply when the IRS adjusts the amount owed. Plaintiff contends that where the amount owed the taxpayer is adjusted by the IRS, the taxpayer is entitled to interest on the IRS-adjusted amount without regard to previous payments made by the IRS for that same tax year.

We see no distinction that suggests a different result here: An overpayment was claimed based on a carryback, and was refunded within 45 days. Later, that overpayment was adjusted, at the Service's instance, rather than as a consequence of the original claim. When the matter was finally resolved, Soo Line was entitled to a refund that was less than the refund it had originally sought in its claim filed in September, and paid in October, of 1984. The relevant facts are in all respects the same as those in the case at bar.

This Court in *Soo Line* concluded (*id*. at 763-64; footnote omitted):

> While there is no specific Code or Treasury regulation governing the exact situation presented by this case, it seems plain to this court that it cannot ignore the tentative allowance the IRS paid to plaintiff on October 12, 1984, in deciding whether plaintiff is entitled to interest on the IRS-adjusted amount. To suggest

> that the prior payment is not relevant defies common sense. As defendant points out, there is nothing in the Code, regulations, or case law that would support this result.
>
> * * * * *
>
> Indeed, as defendant contends, awarding plaintiff interest now on the IRS-adjusted amount would render section 6611(e) a nullity in this case. Having paid plaintiff a tentative allowance greater than the amount plaintiff was eventually owed within 45 days in 1984, the government is correct in asserting that section 6611(e) bars interest on the $2.4 million that should have been paid.
>
> In such circumstances, the court sees no basis upon which to award plaintiff the interest payment it seeks. To be sure, if the IRS-adjusted overpayment had exceeded the earlier tentative allowance, interest would be owed on the difference. Indeed, defendant concedes this point. However, where as here, plaintiff sought and obtained a tentative allowance and was paid within 45 days in an amount greater than the IRS-adjusted amount, an award of interest now on the IRS-adjusted amount would render section 6611(e) meaningless. If plaintiff was not entitled to interest on the earlier tentative allowance, it should not get interest now on an amount that is less than its original claim. In sum, the court cannot find any support for plaintiff's contention that the IRS owes it interest on the IRS-adjusted overpayment.

And so in the case at bar.

Plaintiff argues at length (Pltf. Br. 13-18) that the instant case is somehow different because a claim for a tentative (i.e., carryback) refund is not, for most purposes, a “claim for refund,” as that term is understood throughout the Internal Revenue Code. Yet plaintiff itself must confess (Pltr. Br. at 14, note 9) that such a claim most certainly is a “claim” for purposes of § 6611(f)(3)(B), *the very provision implementing the 45-day rule the application of which controls the instant case.*

Plaintiff also appears to believe that there is some special significance to the “origin” of the overpayment, despite the fact that the statute, logic, and *Soo Line* provide no support for such a suggestion. Plaintiff repeatedly insists (Pltf. Br. 5, 14, 18) that the determination of

overpayment that gives rise to the current claim for interest was somehow attributable to Coca-Cola's April 8, 1991, refund claim made via Form 1120X. This is simply not the case in any sense that we understand. Plaintiff itself contends that its current claim arises somehow because the Tax Court reinstated virtually all of the claim made by plaintiff, in September of 1985, that plaintiff was entitled to a refund of $18,682,973 of taxes paid with respect to 1981 as the consequence of carrybacks to that year from 1984. The Tax Court's jurisdiction (as asserted by plaintiff in its Tax Court petition) was premised on the May 30, 1991, Notice of Deficiency. The 1991 refund claim was certainly not the basis of the Tax Court case, since the Tax Court has no jurisdiction over such denials.

Finally, Coca-Cola claims that its situation is different because it paid a tax deficiency between the time its carryback refund was originally paid and the final resolution of its income tax liability for 1981 (Pltf. Br. at 13-19), and that this case is therefore not *Soo Line* (Pltf. Br. 19-22). But it is unclear why this should make a difference, and plaintiff's brief helps not at all. The statute looks to whether the refund is paid within 45 days. In the instant case, the refund *was* paid within 45 days, and the subsequent events to which plaintiff points change nothing. There exists no statutory support for plaintiff's claimed distinction. Indeed, by calling attention to the intervening deficiency assessment and payment by plaintiff, Coca-Cola embarks on an expedition into dangerous territory, as we discuss below.

2. Plaintiff does not claim additional interest with respect to the overpayment upon which this Court's jurisdiction is based, while the Court is without jurisdiction over the overpayment with respect to which plaintiff claims additional interest.

A suit for additional overpayment interest is not a suit for refund of taxes, to which the normal rules of jurisdiction governing tax-refund suits apply. *Alexander Proudfoot Co. v. United States*, 197 Ct. Cl. 219, 454 F.2d 1379 (1972). It is, instead, a suit founded on an Act of Congress or a regulation, and must be brought within six years of the allowance of the overpayment on which interest was alleged to have been erroneously computed. 28 U.S.C. §§ 1491, 2401(a), 2501; *General Instrument Corp. v. United States*, 33 Fed.Cl. 4 (1995). [9/]

Plaintiff presumably contends that its complaint, filed May 6, 2003, was timely filed because it came within six years of May 25, 1997, the date on which the last overpayment (resulting from the settlement embodied in the stipulated Tax Court decision) was paid to plaintiff by crediting it against Coca-Cola's 1982 taxes. Plaintiff's Proposed Findings of Uncontroverted Fact ("PPFF") ¶ 12. Thus, the only overpayment presently before the Court, as to which plaintiff might claim additional overpayment interest, is the one credited in 1997. The

[9/] The complaint (¶ 1) characterizes this action as one not only for payment of additional interest allegedly owed by the Government on the taxpayer's overpayment of tax, but also for a refund of deficiency interest previously paid by the taxpayer on tax deficiencies. But plaintiff's brief does nothing to demonstrate that a proper claim for refund, specifically setting out the claim made in the instant case, has ever been timely filed. See § 7422(d). And neither the complaint nor plaintiff's proposed findings of fact are of any help. General allegations of "interest as provided by law" are insufficient to raise specific claims for the refund of interest. *Mobil Corp. v. United States*, 52 Fed. Cl. 327 (Fed. Cl. 2002). It is plaintiff's burden to demonstrate that jurisdiction is proper. In the absence of such a showing, the Court is without jurisdiction to hear whatever portion of plaintiff's claim seeks a refund. *See generally*, *Computervision Corp. v. United States*, 62 Fed.Cl. 299 (2004), *aff'd* 445 F.3d 1355, (Fed.Cir. 2006), *rehearing and rehearing en banc denied*, --- F.3d ----, 2006 WL 2505690 (Aug 30, 2006), and cases cited therein.

1997 overpayment generated no overpayment interest. PPFF ¶ 11. It should not have generated any overpayment interest. Plaintiff stipulated, and the Tax Court decision reflected, that the 1997 overpayment consisted of amounts which plaintiff had paid on October 27, 1987, and March 15, 1990 (the dates of the payments of the amounts that had been credited to plaintiff's 1981 account as credits from 1980 and 1984, referred to above, used to satisfy the interim deficiency). The 1997 overpayment thus arose (*i.e.*, the "date of the overpayment" for purposes of § 6611) in part on October 27, 1987, and in part on March 15, 1990. Overpayment interest was thus payable *from* those dates, to the due date of plaintiff's return for 1982 (the liability against which the 1997 overpayment was credited), which date was March 15, 1983. *Marsh & McLennan Companies, Inc. v. United States*, 302 F.3d 1369 (Fed. Cir. 2002). Because the "end" date is earlier than the "start" date, no interest was payable on Coca-Cola's 1997 overpayment of its 1981 taxes.

Plaintiff does not claim that the 1997 overpayment *should* have generated any overpayment interest. [10/] Plaintiff instead complains only that the overpayment refunded to

---

[10/] Plaintiff suggests that the wrong amount of interest (*i.e.*, none) was paid in 1997 only by claiming, in its computations, that interest that was not paid on the 1985 refund should hypothetically be applied to plaintiff's account as of September of 1985, thus reducing the underpayment at that time or increasing the overpayment, with effects cascading down the years to 1997. But, as a matter of fact, no such interest was paid on the 1985 refund. Indeed, the Federal Circuit has recently rejected a similar argument, presented by the Government to recover excessive overpayment interest. *Pacific Gas & Electric Co. v. United States*, 417 F.3d 1375 (Fed. Cir. 2005), *reversing* 55 Fed. Cl. 271 (2003). In that case, the Government had paid too much overpayment interest on one refund, and sought to recover it by taking it into account in computing the amount of overpayment interest to be paid on a later refund. The Federal Circuit held that, inasmuch as the excessive overpayment interest had not been recovered by the Government within the period of limitation imposed by the statute, it could not later be taken into account. So, in the instant case, as plaintiff failed to seek recovery of insufficient overpayment interest on the 1985 refund within the period of limitation for doing so, plaintiff would seem to be barred from nevertheless taking it into account in subsequent computations.

plaintiff on September 27, 1985, consisting of amounts paid prior to that time, ought to have borne interest. Any such claim, it would seem, ought to have been filed before September 27, 1991, to have come within the six-year statute of limitation. 28 U.S.C. § 2501. Indeed, escape from the operation of the statute of limitation is presumably the import of plaintiff's assertion that, at the time of the September 1985 refund, Coca-Cola "had no reason to question the non-payment of allowable interest." Pltf. Br. at 17. But plaintiff had every reason to question that matter within the 6-year statute of limitation since, as plaintiff itself confesses, it filed a claim for refund (disputing disallowance of the carryback, insisting on its reinstatement, and thus asserting all of the premises that plaintiff now belatedly claims entitle it to additional interest) on April 8, 1991, before the statute of limitation ran in September of 1991. Pltf. Br. at 19. [11/]

Plaintiff, anticipating this jurisdictional oddity, ties itself into knots attempting to explain that its action ought not be barred, since it had no way of seeking redress for the wrong of insufficient interest until its washing was entirely done, in 1997. We agree with plaintiff that the statute ought not be interpreted – unless such an interpretation is unavoidable – to posit infliction of a wrong for which there is provided no remedy. But we suggest, consistent with logic, a plain reading of the terms of the 45-day rule, and this Court's decision in *Soo Line*, that resolution of this conundrum is simple: plaintiff is entitled to no interest on the September 1985 refund, as that

---

[11/] Plaintiff would obtain no relief from the bar of the statute of limitation even if its 1991 claim had included an assertion that it was entitled to the interest is seeks in the suit at bar. As noted above, unlike a suit for refund of tax or of deficiency interest paid, a suit for additional interest must be filed within six years of the scheduling of the overpayment as to which it is claimed interest was wrongly computed. *General Instrument, supra*. That is, the statute of limitation depends not at all on the filing of a claim for refund (in contrast to the statute of limitation relating to a suit for refund).

refund was paid within 45 days of plaintiff's claim therefor. There is thus no wrong, and no necessity to cobble together a remedy.

CONCLUSION

The refund of tax paid to plaintiff on September 27, 1985, met the conditions prescribed by the statute for payment without interest. Neither the statutory requirements, nor the facts of the refund, have changed since that time. Accordingly, plaintiff's motion for summary judgment should be denied, the Government's cross-motion for summary judgment should be granted, the complaint should be dismissed, and all allowable costs should be assessed against plaintiff.

Respectfully submitted,

s/ W. C. Rapp

W. C. RAPP
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 307-0503*
*Fax: (202) 514-9440*
*Email: william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*

September 15, 2006

s/ David Gustafson
Of Counsel

# APPENDIX A

## INTERNAL REVENUE CODE OF 1954 AS AMENDED:

### SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS.

(a) General rule.--In the case of any overpayment, the Secretary or his delegate, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person.

(b) Credits against estimated tax.--The Secretary or his delegate is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary (or his delegate) to be an overpayment of the income tax for a preceding taxable year.

### SEC. 6513. TIME RETURN DEEMED FILED AND TAX CONSIDERED PAID.

(a) Early return or advance payment of tax.--For purposes of section 6511, any return filed before the last day prescribed for the filing thereof shall be considered as filed on such last day. For purposes of section 6511(b) (2) and (c) and section 6512, payment of any portion of the tax made before the last day prescribed for the payment of the tax shall be considered made on such last day. For purposes of this subsection, the last day prescribed for filing the return or paying the tax shall be determined without regard to any extension of time granted the taxpayer and without regard to any election to pay the tax in installments.

(b) Prepaid Income Tax.--For purposes of section 6511 or 6512, any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31 For purposes of section 6511 or 6512, any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

(c) Return and payment of social security taxes and income tax withholding.--Notwithstanding subsection (a), for purposes of section 6511 with respect to any tax imposed by chapter 21 or 24--

(1) If a return for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such succeeding calendar year; and

(2) If a tax with respect to remuneration paid during any period ending with or within a calendar year is paid before April 15 of the succeeding calendar year, such tax shall be considered paid on April 15 of such succeeding calendar year.

(d) Overpayment of income tax credited to estimated tax.--If any overpayment of income tax is, in accordance with section 6402(b), claimed as a credit against estimated tax for the succeeding taxable year, such amount shall be considered as a payment of the income tax for the succeeding taxable year (whether or not claimed as a credit in the return of estimated tax for such succeeding taxable year), and no claim for credit or refund of such overpayment shall be allowed for the taxable year in which the overpayment arises.

## SEC. 6611. INTEREST ON OVERPAYMENTS.

(a) RATE. –Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at an annual rate established under section 6621. [12/]

(b) PERIOD. –Such interest shall be allowed and paid as follows:

(1) Credits. –In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.

(2) Refunds. –In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary or his delegate) preceding the date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer. The acceptance of such check shall be without prejudice to any right of the taxpayer to claim any additional overpayment and interest thereon. [13/]

* * * * *

(f) REFUND OF INCOME TAX CAUSED BY CARRYBACK OR ADJUSTMENT FOR CERTAIN UNUSED DEDUCTIONS. –

---

[12/] P.L. 99-514, § 1511(c)(13) amended Code Sec. 6611(a) by replacing “an annual rate established under section 6621” with “the overpayment rate established under section 6621,” effective with respect to determining interest for periods after December 31, 1986.

[13/] P.L. 94-455, § 1906(b)(13)(A) amended the 1954 Code by replacing “Secretary or his delegate” with “Secretary” each time the phrase was used, effective February 1, 1977.

(1) NET OPERATING LOSS CARRYBACK OR CAPITAL LOSS CARRYBACK. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a carryback of a net operating loss or net capital loss, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such net operating loss or net capital loss arises.

(2) INVESTMENT CREDIT CARRYBACK. – For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from an investment credit carryback, such overpayment shall be deemed not to have been made prior to the close of the taxable year in which such investment credit carryback arises, or, with respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made prior to the close of such subsequent taxable year.

P.L. 95-628, § 8(c)(3)(A) amended Code Sec. 6611(f)(2) to read as follows, effective with respect to carrybacks arising in tax years beginning after November 10, 1978:

(2) CERTAIN CREDIT CARRYBACKS. –

(A) IN GENERAL. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a credit carryback, such overpayment shall be deemed not to have been made before the close of the taxable year in which such credit carryback arises, or, with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made before the close of such subsequent taxable year.

(B) CREDIT CARRYBACK DEFINED. –For purposes of this paragraph, the term 'credit carryback' has the meaning given such term by section 6511(d)(4)(C). [14/]

P.L. 105-34, § 1055(b)(1) amended Code Sec. 6611(f) by adding a new paragraph (2) as follows and redesignating subsequent sections, effective with respect to foreign tax credit carrybacks arising in tax years beginning after August 5, 1997:

(2) FOREIGN TAX CREDIT CARRYBACKS. –For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be

---

[14/] P.L. 97-248, § 346(c)(1)(A) amended Code Sec. 6611(f)(1) by replacing "the close of the taxable year" with "the filing date for the taxable year." Section 346(c)(1)(B) amended Code Sec. 6611(f)(2)(A) by replacing "the close of" with "the filing date for" in each occurrence that the phrase appeared, effective with respect to interest accruing after October 3, 1982.

deemed not to have been made before the filing date for the taxable year in which such taxes were in fact paid or accrued, or, with respect to any portion of such credit carryback from a taxable year, such overpayment shall be deemed not to have been made before the filing date for such subsequent taxable year.

(g) REFUND OF INCOME TAX CAUSED BY CARRYBACK OF FOREIGN TAXES. –For purposes of subsection (a), if any overpayment of tax results from a carryback of tax paid or accrued to foreign countries or possessions of the United States, such overpayment shall be deemed not to have been paid or accrued prior to the close of the taxable year under this subtitle in which taxes were in fact paid or accrued. [15/]

**SEC. 7422. CIVIL ACTIONS FOR REFUND.**

(a) No suit prior to filing claim for refund.--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary or his delegate, according to the provisions of law in that regard, and the regulations of the Secretary or his delegate established in pursuance thereof.
(b) Protest or duress.--Such suit or proceeding may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress.

(c) Suits against collection officer a bar.--A suit against any officer or employee of the United States (or former officer or employee) or his personal representative for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected shall be treated as if the United States had been a party to such suit in applying the doctrine of res judicata in all suits instituted after June 15, 1942, in respect of any internal revenue tax, and in all proceedings in the Tax Court and on review of decisions of the Tax Court where the petition to the Tax Court was filed after such date.

(d) Credit treated as payment.--The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so

---

[15/] P.L. 97-248, § 346(c)(1)(D) amended Code Sec. 6611(g) by replacing "the close of the taxable year" with "the filing date (as defined in subsection (f)(3)) for the taxable year" effective with respect to interest accruing after October 3, 1982. P.L. 105-34, § 1055(b)(2)(D) amended Code Sec. 6611 by striking subsection (g) and redesignating subsequent subsections, effective after August 5, 1997.

satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

(e) Stay of proceedings.--If the Secretary or his delegate prior to the hearing of a suit brought by a taxpayer in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the Court of. Claims, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court or the Court of Claims for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes).

(f) Cross references.--

(1) For provisions relating generally to claims for refund or credit, see chapter 65\ (relating to abatements, credit, and refund) and chapter 66 (relating to limitations).

(2) For duty of United States district attorneys to defend suits, see section 507 of Title 28 of the United States Code.

(3) For jurisdiction of United States district courts, see section 1346 of Title 28 of the United States Code.

(4) For payment by the Treasury of judgments against internal revenue officers or employees, upon certificate of probable cause, see section 2006 of Title 28 of the United States Code.

**TREASURY REGULATIONS CODE OF 1954 AS AMENDED:**

**SEC. 301.6402-3 SPECIAL RULES APPLICABLE TO INCOME TAX.**

(a) * * *

(6) Notwithstanding paragraph (a)(5) of this section, the Internal Revenue Service, within the applicable period of limitations, may credit any overpayment of individual, fiduciary, or corporation income tax, including interest thereon, against--

(i) First, any outstanding liability for any tax (or for any interest, additional amount, additions to the tax, or assessable penalty) owed by the taxpayer making the overpayment;

(ii) Second, in the case of an individual taxpayer, amounts of past-due support assigned to a State under section 402(a)(26) or 471(a)(17) of the Social Security Act under procedures set forth in the regulations under section 6402(c);

(iii) Third, past-due and legally enforceable debt under procedures set forth in the regulations under section 6402(d); and

(iv) Fourth, qualifying amounts of past-due support not assigned to a State under procedures set forth in the regulations under section 6402(c).

Only the balance, if any, of the overpayment remaining after credits described in this paragraph (a)(6) shall be treated in the manner so elected.

* * * * *

**SEC. 301.6611-1 INTEREST ON OVERPAYMENTS.**

(a) General rule Except as otherwise provided, interest shall be allowed on any overpayment of any tax at the annual rate referred to in the regulations under section 6621 from the date of overpayment of the tax.

(b) Date of overpayment Except as provided in section 6401(a), relating to assessment and collection after the expiration of the applicable period of limitation, there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability (including any interest, addition to the tax, or additional amount) and the dates of payment of all amounts subsequently paid with respect to such tax liability. For rules relating to the determination of the date of payment

in the case of an advance payment of tax, a payment of estimated tax, and a credit for income tax withholding, see paragraph (d) of this section.

(c) Examples The application of paragraph (b) may be illustrated by the following examples:

(d) Advance payment of tax, payment of estimated tax, and credit for income tax withholding In the case of an advance payment of tax, a payment of estimated income tax, or a credit for income tax withholding, the provisions of section 6513 (except the provisions of subsection (c) thereof), applicable in determining the date of payment of tax for purposes of the period of limitations on credit or refund, shall apply in determining the date of overpayment for purposes of computing interest thereon.

(e) Refund of income tax caused by carryback If any overpayment of tax imposed by subtitle A of the Code results from the carryback of a net operating loss, a net capital loss, an investment credit, or a work incentive (WIN) credit, such overpayment, for purposes of this section, shall be deemed not to have been made prior to the end of the taxable year in which the loss or credit arises, or, with respect to any portion of an investment credit carryback or a WIN credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made prior to the close of such subsequent taxable year.

(f) Refund of income tax caused by carryback of foreign taxes For purposes of paragraph (a) of this section, any overpayment of tax resulting from a carryback of tax paid or accrued to foreign countries or possessions of the United States shall be deemed not to have been paid or accrued before the close of the taxable year under subtitle F of the Code in which such taxes were in fact paid or accrued.

(g) Period for which interest allowable in case of refunds If an overpayment of tax is refunded, interest shall be allowed from the date of the overpayment to a date determined by the district director or the director of the regional service center, which shall be not more than 30 days prior to the date of the refund check. The acceptance of a refund check shall not deprive the taxpayer of the right to make a claim for any additional overpayment and interest thereon, provided the claim is made within the applicable period of limitation. However, if a taxpayer does not accept a refund check, no additional interest on the amount of the overpayment included in such check shall be allowed.

(h) Period for which interest allowable in case of credits-- (h)(1) General rule If an overpayment of tax is credited, interest shall be allowed from the date of overpayment to the due date (as determined under subparagraph (2) of this paragraph (h)) of the amount against which such overpayment is credited.

(h)(2) Determination of due date-- (i)(i) In general The term "due date", as used in this section, means the last day fixed by law or regulations for the payment of the tax (determined without regard to any extension of time), and not the date on which the district director or the director of the regional service center makes demand for the payment of the tax. Therefore, the due date of a tax (other than an additional assessment subject to the special rule provided by subdivision (iv) of this subparagraph) is the date fixed for the payment of the tax or the several installments thereof.

(ii) Tax payable in installments-- (ii)(a) In general In the case of a credit against a tax, where the taxpayer had properly elected to pay the tax in installments, the due date is the date prescribed for the payment of the installment against which the credit is applied.

(ii)(b) Delinquent installment If the taxpayer is delinquent in payment of an installment of tax and a notice and demand has been issued for the payment of the delinquent installment and the remaining installments, the due date of each remaining installment shall then be the date of such notice and demand.

(ii)(b)(iii) Tax or installment not yet due If a taxpayer agrees to the crediting of an overpayment against tax or an installment of tax and the schedule of allowance is signed prior to the date on which such tax or installment would otherwise become due, then the due date of such tax or installment shall be the date on which such schedule is signed.

(ii)(b)(iv) Additional assessment satisfied by credit before January 1, 1958 In the case of a credit made before January 1, 1958, against an additional assessment, the due date of the tax satisfied by the credit is the date the additional assessment was made. For purposes of this subdivision, the term "additional assessment" means a further assessment of a tax of the same character previously paid in part, and includes the assessment of a deficiency as defined in section 6211.

(ii)(b)(v) Assessed interest In the case of a credit against assessed interest, the due date is the date of the assessment of such interest.

(ii)(b)(vi) Additional amount, addition to the tax, or assessable penalty In the case of a credit against an amount assessed as an additional amount, addition to the tax, or assessable penalty, the due date is the date of the assessment.

(ii)(b)(vii) Estimated income tax for succeeding year If the taxpayer elects to have all or part of the overpayment shown by his return applied to his estimated tax for his succeeding taxable year, no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated tax for such year or the installments thereof.

(ii)(b)(vii)(i) [Reserved]

(ii)(j) Refund of overpayment No interest shall be allowed on any overpayment of tax imposed by subtitle A of the Code if such overpayment is refunded--

(ii)(j)(1) In the case of a return filed on or before the last date prescribed for filing the return of such tax (determined without regard to any extension of time for filing such return), within 45 days after such last date, or

(ii)(j)(2) After December 17, 1966, in the case of a return filed after the last day prescribed for filing the return, within 45 days after the date on which the return is filed.

However, in the case of any overpayment of tax by an individual (other than an estate or trust and other than a nonresident alien individual) for a taxable year beginning in 1974, "60 days" shall be substituted for "45 days" each place it appears in this paragraph.