**No. 03-1155T**
**(The Honorable Lawrence J. Block)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**THE COCA-COLA COMPANY AND SUBSIDIARIES,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

---

# PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

JOSEPH M. PERSINGER
GILBERT M. POLT
Attorneys
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Voice: (212) 530-5000
Fax: (212) 822-5072
Email: jpersinger@milbank.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ............................................................ i

PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT .......................... 1

INTRODUCTION ............................................................ 3

PRELIMINARY STATEMENT: The Statutory Framework ............................................ 5

ARGUMENT ............................................................ 9

I. The Company's 1981 Tax Year account was overpaid between March 15, 1985 and September 27, 1985. In 1991, the Company filed a formal claim for refund. In 1997, the Tax Court determined an overpayment, and the Service acknowledged the overpayment, posting an abatement of tax. The Service failed to pay interest on the interim overpayment. ............................................................ 9

II. The defendant's argument is erroneous because it fails to recognize that two distinct events occurred: (i) the application for a tentative adjustment; and (ii) the determination of an overpayment by the Tax Court following a timely claim for refund. The events are not the same. Each event has its own set of procedures, purpose and result. As to the earlier, tentative adjustment request, $12,448,079 was temporarily granted but later recaptured by the IRS. As to the latter claim for refund, a $12,352,648 overpayment was determined by the Tax Court. As to the earlier, tentative adjustment request, an interest exemption may or may not have applied, but to the extent of the amount recaptured, the interest exemption is moot because the root [the adjustment] to which it attached, disappeared. As to the latter claim for refund, (i) the Company followed the correct prescribed procedures, and (ii) ultimately received a Tax Court decision declaring the existence of an interim overpayment to the extent of $12,352,648, for which no interest restriction applies. The fact that plaintiff requested a tentative adjustment in 1985 and temporarily received payment within 45 days of the request is undisputed; however, it is also irrelevant. ............................................................ 14

III. The defendant mischaracterizes plaintiff's arguments. ...................................... 19

IV. Contrary to defendant's repeated insistence otherwise, there is no similarity to or binding legal precedent applicable from Soo Line Railroad Co. v. United States. ............................................................ 24

CONCLUSION ............................................................ 26

## TABLE OF AUTHORITIES & APPENDIX INDEX


| | PAGE | EXHIBIT |
|---|---|---|
| **STATUTES AND RULES** | | |
| 28 U.S.C. §§ 2401, 2501 | 7, 21, 22 | A |
| I.R.C. § 1341(b)(1) | 19 | B |
| I.R.C. § 6212 | 18 | C |
| I.R.C. § 6213 | 18 | D |
| I.R.C. § 6402 | 18 | E |
| I.R.C. § 6411 | 2, 15, 17 | F |
| I.R.C. § 6411 (1985) | 12 | F |
| I.R.C. § 6511 | 7 | G |
| I.R.C. § 6512(b)(1)(1997) | 20 | H |
| I.R.C. § 6611(a) | 5, 6, 11, 21 | I |
| I.R.C. § 6611(b)(1) | 13 | I |
| I.R.C. § 6611(b)(2) | 13 | I |
| I.R.C. § 6611(e) | 8 | I |
| I.R.C. § 6611(e)(2)(2006) | 6 | I |
| I.R.C. § 6611(f) | 13 | I |
| I.R.C. § 6611(f)(4)(B) | 2 | I |
| **TREASURY REGULATIONS** | | |
| § 1.6411-1(b)(2) | 12 | J |
| § 1.6411-2(c)(1985) | 18 | J |
| § 1.6411-3(d)(3) | 17 | J |
| § 301.6611-1(e)(f) | 13 | K |
| **OTHER** | | |
| I.R.M., p. 31(59)0-155, (b) | 13 | L |
| Instructions for Form 1139 (Rev. August 2006) | 12 | M |

## CASES

AT&T Corp. & Subsidiaries v. United States,
62 Fed. Cl. 490 (2004) .......... 13

Coca-Cola Co. v. Comm'r.,
[Docket No. 17171-91](slip op., January 8, 1997) .......... 5, 10, 11, 20

Cohen v. United States,
995 F.2d 207 (Fed. Cir.) .......... 3

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 5, 6

Marsh & McLennan Co. v. United States,
302 F.2d 1369 (Fed. Cir. 2002) .......... 3

O'Bryant v. United States,
49 F.3d 340 (7th Cir. 1995) .......... 3

Pesch v. Comm'r.,
78 T.C. 100 (1982) .......... 18

Rosenman v. United States,
323 U.S. 658 (1945) .......... 5

Soo Line R.R. Co. v. United States,
44 Fed. Cl. 760 (1999) .......... 24

Stanley v. United States,
140 F.3d 1023 (Fed. Cir. 1998) .......... 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE COCA-COLA COMPANY AND SUBSIDIARIES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 03-1155T** |
| **v.** | ) | **The Honorable Lawrence J. Block** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REPLY TO DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"),[1] and the Court's Order of October 11, 2006, plaintiff, The Coca-Cola Company and Subsidiaries ("Coca-Cola" and/or the "Company" and or the "taxpayer"), respectfully submits this Response to Defendant's Cross-Motion for Summary Judgment, and Reply to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment. Plaintiff's Response is based on the grounds that there are no material disputed facts in this matter, and plaintiff is entitled to judgment as a matter of law in that, (i) under § 6601 of the Internal Revenue Code of 1986, as amended (the "Code"), it is entitled to a further refund of deficiency interest paid; and, (ii) under § 6611 of the Code, it is owed additional allowable interest (also referred to herein as "overpayment interest"), both with respect to an overpayment of federal income tax in the 1981

[1] Pursuant to RCFC 5.2(b)(3), 9 pages of plaintiff's previously filed pleadings (notated within) are attached as Appendix Exhibits "N" through "O".

calendar tax year (the "1981 Tax Year") of Coca Cola. Plaintiff's request for a judgment as a matter of law is made pursuant to its Motion for Summary Judgment, filed September 13, 2005. Plaintiff's opposition to defendant's Cross-Motion is further based on the grounds that defendant is not entitled to a judgment as a matter of law because §§ 6411 and 6611(f)(4)(B) of the Code do not control the calculation of allowable interest in the present case.

Plaintiff believes the arguments made on behalf of both plaintiff and defendant are fully developed in their respective briefs. Therefore, plaintiff objects to defendant's request for oral argument.

In support of its Response, and in reaffirmation of its original Motion for Summary Judgment, plaintiff relies upon the Complaint, Answer, Joint Stipulation of Facts ("Jt. Stip."), Affidavit of Francine Silverman in Support of Plaintiff's Motion for Summary Judgment (the "Silverman Affidavit"), Plaintiff's Proposed Findings of Uncontroverted Facts, Plaintiff's Motion for Summary Judgment, Plaintiff's Brief in Support of its Motion for Summary Judgment ("Plaintiff's Brief"), Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Facts ("Def. Resp."), Defendant's Proposed Findings of Uncontroverted Fact ("Def. Proposed Findings") and Defendant's Brief for the United States in Support of its Cross-Motion for Summary Judgment, and In Opposition to Plaintiff's Motion for Summary Judgment ("Def. Br.").

## INTRODUCTION

Title 26 of the United States Code (the "Internal Revenue Code") is a lengthy and complicated compilation of statutes. Marsh & McLennan Co. v. United States, 302 F.2d 1369, 1381 (Fed. Cir. 2002). The section numbers range from #1 through #9833. The intricacies and interdependence of one Code section upon another, as well as one sub-section upon another sub-section, can overwhelm even the most seasoned tax professional. The magnitude of the Code is exacerbated only by the countless number of corresponding Treasury Department Regulations, Revenue Rulings, Revenue Procedures, Private Letter Rulings, Internal Revenue Manual sections, related administrative publications and endless volumes of case law interpreting the aforementioned canon of law. The application of the Code is not always equitable[2] ("Our strict adherence to the law cuts both ways – sometimes the law favors the taxpayer, as here, other times it favors the Government." Stanley v. United States, 140 F.3d 1023, 1030 (Fed. Cir. 1998)) and at times defies common sense ("…it is rare that tax law bears any recognizable relationship to common sense." Cohen v. United States, 995 F.2d 207, 209 (Fed. Cir.)). Nonetheless, where the statute (or statute as interpreted by the Treasury Regulation) is clear and unambiguous, the Court is obligated to enforce the precise statute as written. Marsh & McClennan, Id. 1381.

Notwithstanding the enormity and complexity of our tax system, the question presented by the instant case is quite simple: Whether an interim overpayment of tax (between March 15, 1985 and September 27, 1985, the "interim overpayment") is entitled to overpayment

---

[2] See, O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995)("Although it may seem unjust that the IRS cannot recover its erroneous refund in this case (after all, our holding does give the
*(footnote cont'd…)*

interest. The answer to the question rests first upon identifying the event(s) that ultimately determined the interim overpayment. The reason for this is because different procedural rights [and limitations] attach to different types of adjustment requests. Therefore, the first issue for the Court to consider is: whether the interim overpayment came into existence as the result of (a) the 1985 filing of an application for tentative carryback adjustment, or, (b) the 1991 filing of a claim for refund. In the context of the facts and sequence of events presented here, the issue is one of first impression not only for the Court, but for the federal judiciary.

To allay any concern for confusion, it is imperative that the applicable laws, legal doctrines, administrative commentaries and pertinent facts, be presented fully and accurately before the Court. Unfortunately, defendant's brief frequently neglects relevant facts, misquotes the record, inaccurately assigns dates, incessantly miss-categorizes IRS adjustments and interchanges technical terms that are not interchangeable. Many of its "undisputed" conclusions are unsupported, incorrect and, obviously, "disputed." Defendant's brief feigns ignorance of elementary concepts and infuses unrelated Code sections and unrelated case law. Defendant's brief also commingles the "calendar" dates of adjustments and events, with the "effective" dates of those same adjustments and events. Defendant's opposition and arguments obfuscate the core facts and issue of this case.

Plaintiff addresses each of defendant's suppositions further in this response and reply, but begins with a discussion of technical aspects of tax interest not discussed in defendant's brief. With this foundation, plaintiff believes the correctness of its position set forth in its opening brief will become even more evident, that being: the determination of an interim

Bryants a windfall), we cannot base our resolution of the issue before us on the equities of a particular actual situation.").

overpayment (between 3/15/85 – 9/27/85) in Coca-Cola's 1981 Tax Year was the direct result of the Company's filing of a claim[3] for refund in calendar 1991. Plaintiff has yet to have been paid interest on the interim overpayment; it submits that no applicable statute, regulation or legal precedent restricts interest on the interim overpayment.

## PRELIMINARY STATEMENT: The Statutory Framework

In the "Statutory Framework" section of its brief (Def. Br., p. 2-5), defendant describes certain legal concepts and rules. Some of the statements are correct; others are not. Defendant depicts interest on a tax overpayment as being more akin to a benevolent gift rather than both a statutory requirement and obligation of the Government. It is the latter. Congress unequivocally states, "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at [the applicable rate]." I.R.C. § 6611(a). This provision of the Internal Revenue Code has been in effect for over 50 years. Its origins date to the Code of 1939. Defendant's states that overpayment interest "is not favored," and "not payable to a taxpayer simply because the Government has its hand on money that belongs to that taxpayer." (Def. Brief, p. 3). This comment is simply unsupported, even by defendant's referenced authorities.[4] [5]

---

[3] Via the filing of a Form 1120X – Amended U.S. Corporation Income Tax Return (April 8, 1991) and/or the filing of a petition for redetermination with the United States Tax Court (August 1, 1991). As defined by the Service, the purpose of a Form 1120X is to claim a refund. (Form 1120X (Rev. December 2004, General Instructions – Purpose). Further, in its Petition to the United States Tax Court, Coca-Cola specifically prayed that the Tax Court "[d]etermine that the petitioner has overpayments of income taxes for 1981, 1983 and 1984[.]" See, Petition, Coca-Cola Co. v. Comm'r., [Docket No. 17171-91](slip op., January 8, 1997).

[4] Defendant's Brief references Rosenman v. United States, 323 U.S. 658 (1945) (Def. Br., p. 3). The sole issue in Rosenman is the distinction between a tax payment and a deposit made in the nature of a cash bond. Id. at 662. Entitlement to statutory interest on an overpayment of tax is not questioned in the opinion.

[5] Defendant's Brief references Library of Congress v. Shaw, 478 U.S. 310 (1986) (Def. Br., p. 3). Plaintiff submits that a case regarding interest on attorneys' fees awarded against the Library of Congress in a job-related racial discrimination action, brought under Title VII of the Civil Rights Act of 1964, is not relevant to the statutory requirement of interest under Section 6611(a).

In Rosenman v. United States, 323 U.S. 658 (1945)) (Def. Br., p. 3), the Supreme Court espoused a converse proposition invoking even the "Use of Money" doctrine as a justification for the issuance of allowable interest. ("…a payment which, if in excess of what should properly have been exacted, entitle[s] the taxpayer to interest as the return on the use that the Government has had of moneys that should not have been exacted."). Id. at 663. In Library of Congress v. Shaw, 478 U.S. 310 (1986), the Supreme Court repeatedly stated that generally interest is not permitted against the Government unless there is express statutory authority:

> In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award*** The basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress*** In creating the Court of Claims, Congress retained the Government's immunity from awards of interest, permitting it only where expressly agreed to under contract or statute.

Id. at 314, 315 and 317 (1986). Obviously, section 6611(a) is that type of express Congressional authority to which the Supreme Court referred. Defendant continues with the enumeration of a litany of tax interest exceptions that are plainly inapplicable in the instant matter.[6] Defendant references Code sections that: (i) it admits are irrelevant[7]; and, (ii) do not support the proposition for which they are cited.[8] Notwithstanding these diversions, defendant's brief does allude to a

6 E.g., "advance payments of tax[,]" returns not "in processible form" and "overpayment …applied as an estimated tax payment to the next year." (Def. Br., p. 4). These issues do not apply to the present litigation.

7 Defendant's Brief reads, "Related provisions (not directly relevant)…" (Def. Br., p. 5, fn #5).

8 Defendant's Brief references Code § 6611(e)(2)(2006) (Def. Br., p. 5, fn 5). This section provides the starting date for the 45 day rule as it relates to interest accruing after a claim for refund or credit has been filed. The provision does not address interest which has accrued prior to a claim for refund or credit having been filed.

concept that plaintiff will expand upon, that being, the difference between the effective date of an adjustment and the actual date of an adjustment.[9]

The Service maintains a separate, electronic record of every taxpayer's federal income tax account, notating the amount of each assessment, penalty, payment, credit, offset, refund and interest adjustment affecting the account. For each event or adjustment, the record typically attaches multiple dates: the actual date, the effective date, and the cycle date.

The actual date is the date the event occurred (e.g., the date that a payment was made, a refund was issued, an assessment was determined or tax and/or deficiency interest were abated). The actual date is used for determining procedural parameters such as the statute of limitations. For example: (i) filing a refund claim [2 years from the actual date of the last payment];[10] (ii) filing a suit against the Government [i.e., 6 years from the date the cause of action accrued];[11] and, (iii) the Service's invoking of the 45 day rule [i.e., a refund within 45 days of the actual date the taxpayer filed either its return or refund claim, as the case may be].[12]

The effective date is the "as of when" date the money and/or adjustment was applied (debited or credited) to the account. This date is utilized in computing the actual account balance at any given point in time and is essential for calculating interest.

Finally, the cycle date simply reflects when the transaction and/or adjustment posted to the taxpayer's transcript of account. This date is occasionally utilized in determining when a refund or transfer-out occurred for establishing the beginning date of the statute of limitations period.

---

[9] Defendant states, "if an overpayment of tax results from a carryback of a credit or a net operating loss, the overpayment is deemed not to have arisen prior to the filing date for the taxable year in which the net operating loss or the credits arise." (Def. Br., p. 4).

[10] I.R.C. § 6511.

[11] 28 U.S.C. §§ 2401, 2501.

With this background in place, it is important to keep in mind that [barring a retroactive provision,] it is the actual event date which triggers a procedural rule whereas it is the effective date that is used in the mathematical calculation.

---

[12] I.R.C. § 6611(e).

## ARGUMENT

**I. <u>The Company's 1981 Tax Year account was overpaid between March 15, 1985 and September 27, 1985. In 1991, the Company filed a formal claim for refund. In 1997, the Tax Court determined an overpayment, and the Service acknowledged the overpayment, posting an abatement of tax. The Service failed to pay interest on the interim overpayment.</u>**

As detailed in Plaintiff's Brief (pages 7 - 13 attached hereto as Appendix Exhibit "N"), an interim overpayment, between the dates of March 15, 1985 and September 27, 1985, was created in the Company's 1981 Tax Year due to an investment tax credit applied from the Company's 1984 Tax Year account. The correctness of the carryback was determined by the United States Tax Court in 1997 (Def. Br., p. 8). However, the effective date of the carryback was March 15, 1985. Defendant agrees that the overpayment at issue resulted entirely from the 1984 carryback (Def. Br., p. 8). Defendant further concurs that "[a]s finally adjusted, plaintiff's account for 1981 showed an interim overpayment, between March 15, 1985 (the due date of the return), and September 27, 1985 . . ." (Def. Resp., p. 1, No. 13).

In summary, what the record reflects and what the parties appear to agree upon is that taking into account the 1984 Tax Year carryback, and as finally adjusted, the 1981 tax account went into overpayment status effective March 15, 1985. Due to various adjustments, the account went back into deficiency status as of September 27, 1985. Eventually, the account balance re-emerged in overpayment status as of October 27, 1987, and the final overpayment balance was transferred to another account of the taxpayer in May of 1997, with an effective date of March 15, 1990. The Tax Court's Decision states that "there is an overpayment in income tax

for the taxable year 1981 in the amount of $12,352,648, …"[13] Plaintiff (and ostensibly the Service agrees) believes it is apparent that this amount is an adjustment to the 1981 account [abatement of tax, as reflected in the Transcript (cycle 199719), representing the Tax Court's reversal of the IRS' erroneous recapture of a portion of the carryback (effective March 15, 1985)] and not the actual, final overpayment balance in the account. To be precise, this adjustment produced the interim overpayment effective March 15, 1985, as well as the cascading, overpayment balances materializing later in the 1981 Tax Year Cycle. These observations are sustained by the following facts: (i) the Tax Court opinion does not designate an actual or effective date regarding the $12,352,648 overpayment balance, but merely states that there is an overpayment; (ii) the Service's Transcript of Account reports the $12,352,648 as an adjustment (TC 301), not a balance; (iii) recreating a running balance of the activity in the 1981 Tax Year account by each adjustment's effective date, including the utilization of March 15, 1985 as the effective date of the aforementioned adjustment, produces interest posting balances virtually identical to those reported on the Transcript (See, Silverman Affidavit, Exhibit H, attached hereto as Appendix Exhibit "O"); and, (iv) the parties have in fact already stipulated that "[a]s a result of the Decision and abatement of tax and interest referred to…, an overpayment existed in Company's 1981 Federal income tax account in the amount of $11,855,397 [not $12,352,648] as of March 15, 1990." (Jt. Stip., p. 5, #16).

The Tax Court's decision to allow the carryback, and its determination of an overpayment, were solely the result of Coca-Cola's filing of a claim for refund and subsequent petition to the Tax Court, both filed six years [and obviously, more than 45 days] prior to the Court's decision. The Tax Court's opinion states, "there is an overpayment in income tax for the

---

[13] Coca-Cola Co. v. Comm'r., [Docket No. 17171-91] (slip op., January 8, 1997).

taxable year 1981… for which amount a claim for refund [the Form 1120X ("Amended U.S. Corporation Income Tax Return") was filed on April 8, 1991…"[14] The Tax Court's opinion is noticeably silent regarding the application for tentative adjustment (Form 1139) filed by the Company twelve years earlier. The reason for this, we believe, is obvious: to the extent of the recaptured amount, the application ceased to exist; it was reversed with the posting of an assessment of tax (TC 300, Jt. Stip. ¶ 11). This seminal fact bears repeating for it isolates the resolution of this case to that of determining statutory overpayment interest based on a claim for refund, not on an application for tentative adjustment.

Having complied with the procedural requirements of a claim for refund and having received a determination of an overpayment in the amount of $12,352,648 from the Tax Court based upon the claim for refund, the taxpayer is entitled to statutory interest on the $12,352,648 overpayment for the interim period of March 15, 1985 through September 27, 1985, for the following reasons:

(i) Code section 6611(a) requires this outcome. Section 6611(a) states that "interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621." I.R.C. § 6611(a)(emphasis supplied). To date, the Company has not been paid what it is statutorily entitled to. The defendant proffers that "[i]t is undisputed that the overpayment was refunded in response to plaintiff's claim *** filed September 16, 1985[,](emphasis added)" and that it is undisputed that under 6611 "such promptly-refunded overpayments bear no interest." (Def. Br., p. 9). Plaintiff submits that defendant's "undisputed" statements are incorrect and refuted by the facts. The filing on or about September 16, 1985, was not a claim; it was an application for a tentative carryback

---

[14] Id.

adjustment submitted on a Form 1139. As detailed in Plaintiff's Brief (pages 14-17) and as unequivocally declared by the Treasury Department, "[a]n application for a tentative carryback adjustment does not constitute a claim for credit or refund. If such application is disallowed by the district director or director of a service center in whole or in part, no suit may be maintained in any court for the recovery of any tax based on such application.***" Treasury Regulation § 1.6411-1(b)(2).[15] Thus, it is an impossibility that the "overpayment was refunded in response to plaintiff's claim *** filed September 16, 1985[,]" because in 1985, the plaintiff had not yet filed a claim. Further, it is impossible that the "overpayment" was refunded in response to plaintiff's application for tentative adjustment because a Form 1139/application does not give rise to an overpayment. (See discussion, p. 17, infra.). Lastly, and most importantly, it is impossible that the "overpayment" was refunded in response to plaintiff's application for tentative adjustment because at the time the "overpayment" was declared in 1997, the application for tentative adjustment (to the extent of $12,448,079) had been conclusively disallowed and extinguished for more than six years. What can be said is that there was a temporary allowance of an adjustment, a partial disallowance of that adjustment, a subsequent claim for refund of an overpayment, and finally, a court's determination that an overpayment existed. By function of the adjustments to the account, the overpayment created effectively as of March 15, 1985, ended on September 27, 1985; however, statutory interest owed to taxpayer on the interim overpayment, under the authority of section 6611(a), has not been paid.

---

15 For virtually all purposes, an application for a tentative carryback adjustment shall not constitute a claim for credit or refund. I.R.C. § 6411 (1985). "An application for a tentative reund is not treated as a claim for credit or refund. *** If the application is disallowed in whole or in part, no suit challenging the disallowance may be brought in any court." Instructions for Form 1139 (Rev. August 2006).

(ii) The Service routinely awards interim overpayment interest. As a practical matter, tax account balances of large corporations routinely go in and out of overpayment status. This is not a rare phenomenon and defendant does not deny that over the life of a corporate tax cycle, account balances frequently fluctuate between overpay and underpay positions. Just as defendant recognizes the existence of an interim overpayment in this case, Congress, the Treasury Department and the Service recognize the concepts of both interim underpayments and overpayments for which underpayment and overpayment interest is either charged or allowed. The Code, the Treasury Regulations and the Internal Revenue Manual provide the methodology for calculating interim interest in various situations. See, I.R.C. § 6611(f); Treas. Reg. § 301.6611-1(e)(f); and, I.R.M., p. 31(59)0-155, (b) "Net Overassessment – Allow interest on:" Examples #3 and #5 (January 1, 1996)(attached hereto as Appendix Exhibit "L"). Ostensibly, the unique set of facts presented in this case [allowance of a carryback adjustment, recapture of the carryback adjustment, claim for refund, judicial determination of an overpayment, and IRS reversal of the recapture and abatement of tax] were not anticipated by Congress.[16] Nonetheless, the mandate of section 6611(a) – "[i]nterest shall be allowed and paid upon any overpayment" pervades, and the taxpayer is entitled to the correct statutory interest.

---

16 Section 6611(b)(2) does not address the interim overpayment. Section 6611(b)(2) addresses a refund of a final overpayment balance. In this case, the interim overpayment (the $12,352,648) was not refunded; it ceased to exist. Similarly, section 6611(b)(1) does not apply in determining interest on the interim overpayment because $12,352,648 was not credited to another tax account.

As to the final overpayment balance, plaintiff does not question the fact that interest does not inure on the movement (credit) of the $11,855,397.47 final balance because the date of the amount against which that credit was taken (March 15, 1982) preceded the start date of the overpayment (October 27, 1987). AT&T Corp. & Subsidiaries v. United States, 62 Fed. Cl. 490 (2004). However, interest on the final credit balance is not the issue in the instant matter. Rather it is the interim period of overpayment (between March 15, 1985 and September 17, 1985) for which the Tax Court has determined and the defendant has concurred – an overpayment existed, and for which no statutory interest has yet to have been paid.

**II. The defendant's argument is erroneous because it fails to recognize that two distinct events occurred: (i) the application for a tentative adjustment; and (ii) the determination of an overpayment by the Tax Court following a timely claim for refund. The events are not the same. Each event has its own set of procedures, purpose and result. As to the earlier, tentative adjustment request, $12,448,079 was temporarily granted but later recaptured by the IRS. As to the latter claim for refund, a $12,352,648 overpayment was determined by the Tax Court. As to the earlier, tentative adjustment request, an interest exemption may or may not have applied, but to the extent of the amount recaptured, the interest exemption is moot because the root [the adjustment] to which it attached, disappeared. As to the latter claim for refund, (i) the Company followed the correct prescribed procedures, and (ii) ultimately received a Tax Court decision declaring the existence of an interim overpayment to the extent of $12,352,648, for which no interest restriction applies. The fact that plaintiff requested a tentative adjustment in 1985 and temporarily received payment within 45 days of the request is undisputed; however, it is also irrelevant.**

Defendant maintains that the interim overpayment was the result of an Application for a Tentative Carryback Adjustment (Form 1139) filed on or about September 15, 1985. The Service examined the tentative adjustment, and paid the amount requested to the Company on September 27, 1985. Because the Service initially paid the taxpayer within 45 days of the application, the defendant maintains it did not, and does not, owe interest on the interim overpayment, regardless of when the overpayment was ultimately determined.

Defendant's position rests solely on events that transpired in 1985, and because of this, defendant now disavows the significance of the events that transpired after 1985, in order to escape their impact. To accomplish this, defendant has created an abbreviated fiction depicting the Company's 1981 Tax Year history. It sets forth the following as being all of the pertinent facts: The taxpayer "claimed" a refund of an overpayment in calendar 1985, received the refund within 45 days of the request, and, after some small quibbling about the exact amount, ultimately got paid virtually all that it asked for. Notwithstanding the erroneous substitution of the term "claim" in lieu of "application for a tentative adjustment," this description is problematic

because it masks reality and masks the application of the Code's rules. Defendant's depiction cuts-off post 1985 events and adjustments in order to make it appear that the Company's initial request (in calendar 1985) was the basis for its permanent receipt of the overpayment in 1997. The complete picture reveals that, yes, Coca-Cola requested $18 million in calendar 1985, but, Coca-Cola had to go the Tax Court and wait **twelve years** before it received $12.3 million of it! **Twelve years is longer than 45 days!**

Defendant's argument fails for a multitude of reasons: First, no one (not the Service, not a tax professional, and especially not the Court) examines a portion of a taxpayer's **tax history in isolation**. The tax history is looked at in its entirety because subsequent events may have earlier, effective dates. For defendant to assert that "[p]laintiff was paid a refund within 45 days of requesting it[,]" that "[t]he statute looks to this – and only this…[,]" and that "latter events in no way change the facts upon which the operation of the statute relies…" undermines the interaction between the provisions of Code sections 6411 and 6611. As discussed above, the effect of an adjustment may be earlier than its actual occurrence date and/or posting date for mathematical and interest calculation purposes, though not for procedural purposes. For example, in the case of Coca-Cola's 1981 Tax Year: (i) on or about September 13, 1985, the Company requested a "tentative carryback **adjustment.**" The result of that event was the posting of a TC 295 (Abatement of Tax) on the IRS' Transcript of account with an effective date for interest purposes of **3/15/85** (as stated on the Transcript); (ii) on or about January 23, 1991, following an audit, the Service posted a TC 300 (Additional Tax or Deficiency Assessment) representing in part, the partial recapture ($12,448,079) of the aforementioned (granted) tentative carryback adjustment. The effective date of this portion of the adjustment

was also, **3/15/85**[17]; and, (iii) on or about May 19, 1997, following the Company's filing of a petition for redetermination with the United States Tax Court, and the Tax Court's subsequent entering of a decision in favor of the Company, the Service posted a TC 301 ("Abatement of Tax by Examination), again, with an effective date of **3/15/85**.

According to the defendant, "the **subsequent events to which plaintiff points change nothing**." (Def. Br. At 13). Perhaps to the Government the subsequent events changed nothing, but to the taxpayer, the partial recapture that occurred in January 1991 changed everything. It meant that the Company had to pay over to the Service $12.44 million plus an additional $3.7 million in interest because of the Service's erroneous denial of the originally granted, carryback adjustment request. [Note, the $3.7 million of deficiency interest was calculated utilizing not 1/23/91 as the starting date, but rather **3/15/85]**. As a result of the "subsequent events …which …change nothing[,]" the Company not only had to reach into its own pocket, it had to spend the next six years seeking its rights in the form of filing an amended tax return, filing suit in the United States Tax Court and litigating the Service's determination. (Events that alone or in tandem, constitute an actual, formal claim for refund as opposed to a request for a tentative adjustment). In 1997, as the result of a stipulated Tax Court decision, the Service reversed the erroneous recapture and posted an abatement of tax with an effective date of 3/15/85. This event, initiated by the plaintiff's claim for refund, not the filing of a Form 1139 twelve years prior, is what created an interim overpayment as of 3/15/85, thereby increasing the succeeding account balances to render a final overpayment balance of $11,855,397.47, plus interest as provided by law. What this analysis demonstrates, and what defendant fails to admit, is that two distinct events occurred: the application for a tentative adjustment; and, the filing of a

---

17 Not noted on the IRS Transcript, but noted on the IRS workpapers.

refund claim. With respect to the earlier, tentative adjustment request, $12,448,079 of the initially allowed amount was recaptured. With respect to the 1991 claim for refund, an overpayment was determined. With respect to the earlier tentative adjustment, an interest-free exemption may have applied but if so, only to the extent the Service permanently allowed the adjustment. As to the amount separately claimed, litigated and determined to be an overpayment, no 45 day rule interest restriction applies to the interim period. Defendant's efforts to camouflage and/or undermine the import of the subsequent events do not change the facts.

The defendant's argument is further flawed because the Form 1139, on which the defendant's argument relies, does not give rise to a tax overpayment. It gives rise to an adjustment. Nowhere in Code sections 6411(a), (b) or (c) is there any reference to, or mention of the term "overpayment." It does not exist. Should the result of the adjustment result in a surplus, both the Code and the Treasury Regulations state that the "remainder" shall be credited or refunded.[18]

The most damaging flaw in defendant's argument is that in and of itself, the Form 1139, upon which defendant's argument relies, cannot procedurally lead to the subsequent events that occurred. The disallowance of the Tentative Carryback adjustment in whole or in part is final.

> If the district director or director of a service center finds that an application for a tentative carryback adjustment contains material omissions or errors of computation, he may disallow such application in whole or in part without

---

[18] But for a "tentative refund of tax under claim of right" there is no reference to the word "overpayment" in either Section 6411 of the Code or the accompanying Treasury Regulation.

> Any **remainder** of the decrease after such application and credits may, within the 90 day period, in the discretion of the district director or director of a service center, be credited against any tax or installment thereof then due from the taxpayer, and, if not so credited, shall be refunded to the taxpayer…

Treas. Reg. § 1.6411-3(d)(3) (emphasis added).

> further action… Such internal revenue officer's determination as to whether he can correct any error of computation within the 90-day period shall be conclusive. Similarly, his action in disallowing in whole or in part, any application for a tentative carryback adjustment shall be final and may not be challenged in any proceeding. The taxpayer in such case, however, may file a claim for credit or refund under section 6402, and may maintain a suit based on such claim…

Treas. Reg. § 1.6411-2(c)(1985). Upon its denial or recapture, the Form 1139 affords no further rights. The recapture of the 1139 is not a certified disallowance upon which a taxpayer can sue in court. The recapture of the 1139 does not ipso facto lead to a certified notice of deficiency upon which the taxpayer can petition the Tax Court. I.R.C. §§ 6212, 6213. But for the Government taking some further discretionary remedy to which the taxpayer may respond or defend,[19] the recapture of amounts paid pursuant to a Form 1139 does not afford the taxpayer any further rights (and of course does not permit entrée or access to the United States Tax Court). In the present matter, the only recourse initially available to Coca-Cola, was to repay the temporary refund plus interest and begin the procedural process of filing a refund claim under the auspices of section 6402 of the Code. Yet, defendant holds on to the vestige of an exception, the root of which has been removed. Plaintiff, again, must rhetorically ask: how can the Government avail itself of a 45 day procedural rule not only twelve years after the date to which the rule attaches, but, also, years after the root of the event (the adjustment) has been conclusively eliminated? If IRS' disallowance of the application is "conclusive" and "final" as to the taxpayer, why is not "conclusive" and "final" to the defendant?

---

[19] See, Pesch v. Comm'r., 78 T.C. 100, 117 (1982).

## III. <u>The Defendant Mischaracterizes Plaintiff's arguments.</u>

As previously noted, defendant repeatedly, and **erroneously**, refers to the 1985 "application" for a tentative carryback adjustment as a "claim" for refund. (Def. Br., p.s 5, 6, 8, 9, 10, 13 and 15). The terms have different meanings and consequences, most notable being that an application may result in a quick mathematical adjustment, but affords the applicant no rights to challenge the Service's determination if denied, whereas a claim for refund may result in a determination of an overpayment of tax, and always provides the taxpayer with appeal and litigation rights. The substitution of these terms for one another [necessary for defendant's argument to succeed] is incorrect.

Similarly, defendant **erroneously** refers to the allowance of a tentative carryback adjustment as an "overpayment." (Def. Br., p.s 5, 6, 9 and 16). But for applications made under section 1341(b)(1) ("Computation of tax where taxpayer restores substantial amount held under claim of right"), an application made pursuant to Code section 6411 does <u>not</u> produce an overpayment. Code § 6411.

Defendant's recitation of the payment history is **inconsistent and confusing**. Defendant co-mingles actual dates with effective dates, and assigns a variety of values to the term "overpayment." On pages "7" and "8" of its brief, defendant maintains that "the overpayment finally paid to plaintiff in 1997 [ostensibly $<u>11,855,397.47</u>]" consisted of overpayment credits in the amounts of $986,000, $712,000 and $11.9 million all of which were made after the tentative refund of 1985. The total of these amounts, however, is far in excess of "the overpayment finally paid to plaintiff in 1997." More confusing is that defendant's brief later reads, "[t]he overpayment resulted entirely from the reversal of virtually all of the carryback

recapture [$12,352,648] (Def. Br., p. 8), and even later reads that there was a "total overpayment of $17.88 million." (Def. Br., p. 9, emphasis added).

Defendant **mistakenly** charges plaintiff with contending "its current claim arises somehow because the Tax Court reinstated virtually all of the claim made by plaintiff, in September of 1985, that plaintiff was entitled to a refund of $18,682,973 of taxes paid with respect to 1981…" (Def. Br., p. 13, emphasis supplied). Having unequivocally maintained throughout this entire proceeding that the issue before the Court is the result of Coca-Cola's 1991 filings of a Form 1120X and Petition to the Tax Court, neither of which even reference the 1985 Form 1139, it is obvious that plaintiff did not, and has not, made such contention. Impugning defendant's accusation even further is the Tax Court's opinion which specifically reads, "there is an overpayment in income tax for the 1981 tax account … for which amount a claim for refund was filed on April 8, 1991, … and which claim had not been disallowed before the date of the mailing of the notice of deficiency[.]" Coca-Cola Co. v. Comm'r., [Docket No. 17171-91] (slip op., January 8, 1997) (emphasis supplied).

It does appear that defendant is challenging plaintiff's statement that "[t]he [1991] Refund Claim culminated in the Tax Court's Stipulated Decision…" (Plaintiff's Brief, p. 9) (Def. Br., p.13). Admittedly, it is true that the Tax Court's jurisdiction was initially premised on the mailing of a notice of deficiency, however, it is also true that "if the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year, … the Tax Court shall have jurisdiction to determine the amount of such overpayment, and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." I.R.C. § 6512(b)(1)(1997).

In addition to these mistakes, defendant (i) **excessively narrows** the statutory jurisdictional authority of the Court to entertain this controversy, and, (ii) mischaracterizes plaintiff's position regarding the nature of the suit.

Contrary to defendant's "presumption" and beliefs (Def. Br., p.s 14-16), sections 2401(a) and 2501 of Title 28 of the United States Code do not attach the erroneous [or non] computation of interest to a specific overpayment. Neither statute references the word "overpayment." Section 2401(a) reads, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a)(1997). Section 2501 reads, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. 2501 (1997). As applied to overpayment interest, the operation of the statute depends not on the refund or credit dates per se, but rather on when the cause of action started to accrue, or when a reasonable taxpayer should have become aware that a cause of action started to accrue. In this matter, at its earliest, the "right of action" and/or "claim" started to accrue when the Service abated tax and deficiency interest (May 19, 1997), but contemporaneously failed to compute correctly allowable interest regarding the period affected by the abatements – the interim overpayment period. Until the Service abated previously assessed tax and deficiency interest, the taxpayer had no knowledge as to whether an action for overpayment interest (Code Section 6611(a)) did or did not exist. Having filed the complaint (May 6, 2003) within six years of the of the right of action's first accrual, this action is in compliance with the jurisdictional statute[s], and the Court is within its authority to entertain the proceeding at hand.

Defendant **mischaracterizes** plaintiff's position as well. The nature of plaintiff's action is restricted to the failure of the Service to calculate and pay statutory interest on the overpayment existing in its 1981 Tax Year Account for the interim period of March 15, 1985 through September 27, 1985. Contrary to the Government's assertion, Coca-Cola did not, and does not, request overpayment interest on the amount credit-transferred in 1997 [what Government has labeled "[t]he 1997 overpayment." (Def. Br., p.s 14-15)]. At no time has plaintiff suggested that interest was erroneously calculated on the Service's transfer of the $11,855,397.47 credit balance to the taxpayer's 1982 Tax Year Federal Income Tax account.

Equally unavailing is defendant's suggestion that plaintiff "ought to have" filed this "claim" [sic][assumed to mean "complaint"] by September 27, 1991 (Def. Br., p. 16). Attempting to attach the six year statute of limitations (28 U.S.C. §§ 2401, 2501) to the Service's tentative adjustment of September 27, 1985, defendant, once again, **misinterprets** plaintiff's position in order to support an argument. Contrary to the Government's assertion, the statement, "[p]laintiff instead complains only that the overpayment [sic] refunded to plaintiff on September 27, 1985, consisting of amounts paid prior to that time, ought to have borne interest[.]" (Def. Br., p.s 15-16), is utterly false. It is not the position of the plaintiff. It is not found in the record. Such an allegation would necessitate the plaintiff to have predicted in 1985, what the Service was going to do in 1991 – erroneously recapture the carryback and tentative adjustment. Clairvoyant, the plaintiff is not. Defendant's supposition is yet more inexplicable because even if plaintiff did have a crystal ball, the future event to which defendant refers – the 1991 assessment (recapture of a portion of the carryback ) – is not an event that would spawn the accrual of a [28 U.S.C. §§ 2401, 2501] cause of action for overpayment interest as defendant suggests. The only available recourse spawned by the 1991 assessment of tax [and <u>deficiency</u>

interest], was the recourse Coca-Cola actually pursued – the filing of a claim for refund (the 1120X). The filing of a complaint for additional allowable interest was not a suitable option at that juncture since no overpayment had been determined.

Defendant further **confuses** plaintiff's argument by attempting to attach some significance to the fact that the Company's Form 1120X was filed within six years of the Service's 1985 tentative refund – the implication being that the statute of limitations for actions against the United States was inexplicably triggered during that same period. Defendant neglects to point out that: (i) the IRS assessments of additional tax and deficiency interest also occurred within six years of the Service's 1985 tentative refund (Jt. Stip., ¶ 11); (ii) the Company's Form 1120X was filed two and a half months after the assessment (Jt. Stip., ¶ 12); and, (iii) the 1120X was filed in response to the assessment. That these events occurred within six years of the tentative adjustment, and, the statute of limitations for actions against the United States is also six years, is coincidental. For the defendant to draw some connection and construct an argument that because of this timing, a cause of action must have begun to accrue in 1985 for the Service's failure to compute or correct overpayment interest twelve years in the future, is not coherent. In no way, shape or form did the Service's tentative adjustment in 1985 trigger the six year statute of limitations. Not only does the Government put the cart before the horse, it defies logic to infer that plaintiff "had every reason to question" matters that had yet to occur within the 6-year statute of limitation …" (Def. Br., p. 16). The argument that a §§ 2401, 2501 - six year statute of limitations attaches to the allowance of the application for a tentative carryback adjustment is misplaced.

Finally, defendant is **incorrect** in stating, "[p]laintiff stipulated … that the 1997 overpayment consisted of amounts which plaintiff had paid on October 27, 1987, and March 15,

1990…" (Def. Br., p. 15). Plaintiff did not stipulate to such and the record does not reflect any such stipulation.

**IV. Contrary to defendant's repeated insistence otherwise, there is no similarity to or binding legal precedent applicable from Soo Line Railroad Co. v. United States.**

As with the other issues, the Government analyzes Soo Line Railroad Co. v. United States,[20]in a vacuum. It considers events that occured through the date of tentative adjustment, but not beyond. Defendant has not responded to plaintiff's arguments. Defendant has yet to reconcile the disparity of the 45 day - tentative carryback adjustment being recaptured in Coca-Cola's account, but not in Soo Line. Defendant has yet to respond to the effect of the recapture, regarding the procedural, restricted interest exception. Defendant has yet to reconcile the factual difference that when Soo Line Railroad received its additional carryback allowance, it contemporaneously incurred an even larger base tax liability attributable to the year in question. Coca-Cola did not. Defendant cannot deny these factual distinctions with the Soo Line decision. The only fact shared between the two cases are that they involve taxpayers who initially applied for a tentative carryback adjustment. By all accounts, this similarity hardly makes the cases "indistinguishable" as defendant would have the Court believe.

Defendant has massaged the facts of Soo Line, glossing over critical differences, to achieve parity with the present case. In comparing the cases, the Government argues:

> We see no distinction that suggests a different result here: An overpayment was claimed based on a carryback, and was refunded within 45 days. Later, that ***overpayment was adjusted, at the Service's instance, rather as a consequence of the original claim***. When the matter was

---

[20] Soo Line R.R. Co. v. United States, 44 Fed. Cl. 760 (1999).

> finally resolved, Soo Line was entitled to a refund that was less than the refund it had originally sought in its claim filed in September, and paid in October, of 1984.

(Def. Br., p. 11) (emphasis supplied). The highlighted sentence is the crux of the distinction. First, it must be repeated that Coca-Cola's "overpayment" was not adjusted; it was "determined" initially in 1997 by the Tax Court. The pivotal difference, however, is the reference to the term "consequence of the original claim." If by that term the Government suggests that the allowance of the $12,352,648 was a consequence of the Form 1139 filed in 1985, then that would imply the 1120X and the Tax Court petition were completely unnecessary and the Service would have just reversed the recapture on its own! This scenario is hardly likely. If by the term ("consequence of the original claim") the Government suggests that the allowance of the $12,352,648 was a consequence of the Form 1120X filed in 1991, then we totally concur and maintain that because the procedural, 45 day interest exception did not apply to the 1120X, statutory interest on the interim overpayment must inure.

## CONCLUSION

For the reasons stated both here and in Plaintiff's Brief in Support of its Motion for Summary Judgment, this Court should deny the defendant's request, and should grant plaintiff's motion for summary judgment.

Dated this 18th day of January, 2007

Respectfully submitted,

s/Joseph M. Persinger
Joseph M. Persinger
Attorney of Record
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000
Email: jpersinger@milbank.com

s/Gilbert M. Polt
Gilbert M. Polt
Of Counsel