No. 03-1155T
(The Honorable Lawrence J. Block)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE COCA-COLA COMPANY AND SUBSIDIARIES,

Plaintiff

v.

THE UNITED STATES,

Defendant

# APPENDIX (2 of 2)

TO

PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT J

# I. FINAL-REG, TRC-REGS, §1.6411-1. Tentative carryback adjustments

⚠ *Reg. §1.6411-1 does not reflect P.L. 94-455, P.L. 95-30, P.L. 97-34 or P.L. 98-369.* ⚠

**§1.6411-1. Tentative carryback adjustments**

(a) *In general.* --Any taxpayer who has a net operating loss under section 172, a net capital loss under section 1211(a) which is a carryback under section 1212, or an unused investment credit under section 46, may file an application under section 6411 for a tentative carryback adjustment of the taxes for taxable years prior to the taxable year of the net operating or capital loss or the unused credit, whichever is applicable, which are affected by the net operating loss carryback, the capital loss carryback, or the unused investment credit carryback, resulting from such loss or unused credit. The regulations under section 6411 shall apply with respect to investment credit carrybacks for taxable years ending after December 31, 1961, but only with respect to applications for tentative carryback adjustments for investment credit carrybacks filed after November 2, 1966. The right to file an application for a tentative carryback adjustment is not limited to corporations, but is available to any taxpayer otherwise entitled to carry back a loss or unused credit. A corporation may file an application for a tentative carryback adjustment even though it has not extended the time for payment of tax under section 6164. In determining any decrease in tax under §§1.6411-1 through 1.6411-4, the decrease in tax is determined net of any increase in the tax imposed by section 56 (relating to the minimum tax for tax preferences).

(b) *Contents of application*

(1) The application for a tentative carryback adjustment shall be filed, in the case of a corporation, on Form 1139, and in the case of taxpayers other than corporations, on Form 1045. The application shall be filled out in accordance with the instructions accompanying the form, and all information required by the form and the instructions must be furnished by the taxpayer.

(2) An application for a tentative carryback adjustment does not constitute a claim for credit or refund. If such application is disallowed by the district director or director of a service center in whole or in part, no suit may be maintained in any court for the recovery of any tax based on such application. The filing of an application for a tentative carryback adjustment will not constitute the filing of a claim for credit or refund within the meaning of section 6511 for purposes of determining whether a claim for credit or refund was filed prior to the expiration of the applicable period of limitation. The taxpayer, however, may file a claim for credit or refund under section 6402 at any time prior to the expiration of the applicable period of limitation, and may maintain a suit based on such claim if it is disallowed or if the district director or director of a service center does not act on the claim within six months from the date it is filed. Such claim may be filed before, simultaneously with, or after the filing of the application for a tentative carryback adjustment. A claim for credit or refund under section 6402 filed after the filing of an application for a tentative

carryback adjustment is not to be considered an amendment of such application. Such claim, however, in proper cases may constitute an amendment to a prior claim filed under section 6402.

(c) *Time and place for filing application.* --Except as otherwise provided in this paragraph the application for a tentative carryback adjustment shall be filed on or after the date of the filing of the return for the taxable year of the net operating loss, net capital loss, or unused investment credit and shall be filed within a period of twelve months from the end of such taxable year. With respect to any portion of an investment credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, the twelve-month period shall be measured from the end of such subsequent taxable year. In the case of an application for a tentative carryback adjustment attributable to the carryback of an unused investment credit, the twelve-month period for filing shall not expire before the close of December 31, 1966. Any application filed prior to the date on which the return for the taxable year of the loss or unused credit is filed shall be considered to have been filed on the date such return is filed. In the case of an application filed before April 15, 1968, the application shall be filed with the internal revenue officer to whom the tax was paid or by whom the assessment was made. Except as provided in paragraph (b) of §301.6091-1 (relating to hand-carried documents), in the case of an application filed after April 14, 1968, if the tax was paid to the Director of International Operations, the application shall be filed with him; otherwise the application shall be filed with the internal revenue office with which the return was filed. [Reg. §1.6411-1.]

[*T.D.* 6364, 2-13-59. *Amended by T.D.* 6862, 11-17-65, *T.D.* 6950, 4-3-68, *T.D.* 7301, 1-3-74, *T.D.* 7564, 9-11-78 *and T.D.* 8107, 12-1-86.]

**FINAL-REG, TRC-REGS, §1.6411-2. Computation of tentative carryback adjustment**

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**§1.6411-2. Computation of tentative carryback adjustment**

(a) *Tax previously determined.* --The taxpayer is to determine the amount of decrease, attributable to the carryback, in tax previously determined for each taxable year before the taxable year of the net operating loss, net capital loss, or unused investment credit. The tax previously determined is to be ascertained in accordance with the method prescribed in section 1314(a). Thus, the tax previously determined will be the tax shown on the return as filed, increased by any amounts assessed (or collected without assessment) as deficiencies before the date of the filing of the application for a tentative carryback adjustment, and decreased by any amounts abated, credited, refunded, or otherwise repaid prior to such date. Any items as to which the Internal Revenue Service and the taxpayer are in disagreement at the time of the filing of the application shall be taken into account in ascertaining the tax previously determined only if, and to the extent that, they were reported in the return, or were reflected in any amounts assessed (or collected without assessment) as deficiencies, or in any amounts abated, credited, refunded, or otherwise repaid, before the date of filing the application. The tax previously determined, therefore, will reflect the foreign tax credit and the credit for tax withheld at source provided in section 32.

(b) *Decrease attributable to carryback.* --The decrease in tax previously determined which is affected by the carryback or any related adjustments, is to be determined, except for such carryback and related adjustments, on the basis of the items which entered into the computation of such tax as previously determined; the tax previously determined being ascertained in the manner described in this section. In determining any such decrease, items shall be taken into account only to the extent that they were reported in the return, or were reflected in amounts assessed (or collected without assessment) as deficiencies, or in amounts abated, credited, refunded, or otherwise repaid, before the date of filing the application for a tentative carryback adjustment. If the Internal Revenue Service and the taxpayer are in disagreement as to the proper treatment of any item, it shall be assumed for purposes of determining the decrease in the tax previously determined that such item was correctly reported by the taxpayer unless, and to the extent that, the disagreement has resulted in the assessment of a deficiency (or the collection of an amount without an assessment), or the allowing or making of an abatement, credit, refund, or other repayment, before the date of filing the application. Thus, if the taxpayer claimed a deduction on its return of $50,000 for salaries paid its officers but the district director asserts that such deduction should not exceed $20,000, and the Internal Revenue Service and the taxpayer have not agreed on the amount properly deductible before the date the application for a tentative carryback adjustment is filed, $50,000 shall be considered as the amount properly deductible for purposes of determining the decrease in tax previously determined in respect of the application for a tentative carryback adjustment. In determining the decrease in tax previously determined, any items which are affected by the carryback must be adjusted to reflect such carryback. Thus, unless otherwise provided, any deduction limited, for example, by adjusted gross income, such as the deduction for medical, dental, etc., expenses is to be recomputed on the basis of the adjusted gross income as affected by the carryback. [Reg. §1.6411-2.]

[*T.D.* 6364, 2-13-59. *Amended by T.D.* 7301, 1-3-74.]

---

*Federal Tax Service Explanations:*

**1.6411-2(A)**

BUSEXP:45,256.10

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**FINAL-REG, TRC-REGS, §1.6411-3. Allowance of adjustments**

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**§1.6411-3. Allowance of adjustments**

(a) *Time prescribed*. --The district director or director of a service center (either of whom are sometimes hereinafter referred to in this section as internal revenue officer) shall act upon any application for a tentative carryback adjustment filed under section 6411(a) within a period of 90 days from whichever of the following two dates is the later:

(1) The date the application is filed; or

(2) The last day of the month in which falls the last date prescribed by law (including any extension of time granted the taxpayer) for filing the return for the taxable year of the net operating loss, net capital loss, or unused investment credit from which the carryback results.

(b) *Examination*. --Within the 90-day period described in paragraph (a) of this section, the district director or director of a service center shall make, to the extent he deems practicable in such period, an examination of the application to discover omissions and errors of computation. He shall determine within such period the decrease in tax previously determined, affected by the carryback or any related adjustments, upon the basis of the application and such examination. Such decrease shall be determined in the same manner as that provided in section 1314(a) for the determination by the taxpayer of the decrease in taxes previously determined which must be set forth in the application for a tentative carryback adjustment. Such internal revenue officer, however, may correct any errors of computation or omissions he may discover upon examination of the application. In determining the decrease in tax previously determined which is affected by the carryback or any related adjustment, he accordingly may correct any mathematical error appearing on the application and he may likewise correct any modification required by the law and incorrectly made by the taxpayer in computing the net operating loss, net capital loss, or unused investment credit, the resulting carrybacks, or the net operating loss deduction, capital loss deduction, or investment credit allowable. If the required modification has not been made by the taxpayer and such internal revenue officer has available the necessary information to make such modification within the 90-day period, he may, in his discretion, make such modification. In determining such decrease, however, such internal revenue officer will not, for example, change the amount claimed on the return as a deduction for depreciation because he believes that the taxpayer has claimed an excessive amount; likewise, he will not include in gross income any amount not so included by the taxpayer, even though such officer believes that such amount is subject to tax and properly should be included in gross income.

(c) *Disallowance in whole or in part*. --If the district director or director of a service center finds that an application for a tentative carryback adjustment contains material omissions or errors of computation, he may disallow such application in whole or in part without further action. If, however, he deems that any error of computation can be corrected by him within the 90-day period, he may do so and allow the application in whole or in part. Such internal revenue officer's determination as to whether he can correct any error of computation within the 90-day period shall be conclusive. Similarly, his action in disallowing, in whole or in part, any application for a tentative carryback adjustment shall be final and may not be challenged in any proceeding. The taxpayer in such case, however, may file a claim for credit or refund under section 6402, and may maintain a suit based on such claim if it is disallowed or if such internal revenue officer does not act upon the claim within 6 months from the date it is filed.

(d) *Application of decrease*

(1) Each decrease determined by the district director or director of a service center in any previously determined tax which is affected by the carryback or any related adjustments shall first be applied against any unpaid amount of the tax with respect to which such decrease was determined. Such unpaid amount of tax may include one or more of the following:

(i) An amount with respect to which the taxpayer is delinquent;

(ii) An amount the time for payment of which has been extended under section 6164 and which is due and payable on or after the date of the allowance of the decrease; and

(iii) An amount (including an amount the time for payment of which has been extended under section 6162, but not including an amount the time for payment of which has been extended under section 6164) which is due and payable on or after the date of the allowance of the decrease.

(2) In case the unpaid amount of tax includes more than one of such amounts, the district director, or director of a service center in his discretion, shall determine against which amount or amounts, and in what proportion, the decrease is to be applied. In general, however, the decrease will be applied against any amounts described in subparagraph (1)(i), (ii), and (iii) of this paragraph in the order named. If there are several amounts of the type described in subparagraph (1)(iii) of this paragraph, any amount of the decrease which is to be applied against such amount will be applied by assuming that the tax previously determined minus the amount of the decrease to be so applied is "the tax" and that the taxpayer had elected to pay such tax in installments. The unpaid amount of tax against which a decrease may be applied under subparagraph (1) of this paragraph may not include any amount of tax for any taxable year other than the year of the decrease. After making such application, such internal revenue officer will credit any remainder of the decrease against any unsatisfied amount of any tax for the taxable year immediately preceding the taxable year of the net operating loss, capital loss, or unused investment credit, the time for payment of which has been extended under section 6164.

(3) Any remainder of the decrease after such application and credits may, within the 90-day period, in the discretion of the district director or director of a service center, be credited against any tax or installment thereof then due from the taxpayer, and, if not so credited, shall be refunded to the taxpayer within such 90-day period. [Reg. §1.6411-3.]

[*T.D.* 6364, 2-13-59. *Amended by T.D.* 6950, 4-3-68 *and T.D.* 7301, 1-3-74.]

---

*Federal Tax Service Explanations:*

**1.6411-3(A)**

BUSEXP:45,258.05; IRS:33,352

**1.6411-3(C)**

BUSEXP:45,258.05

**1.6411-3(D)(1)**

BUSEXP:45,256.10

**1.6411-3(a)**

CONSOL:19,050; NOL:51,060

**1.6411-3(c)**

NOL:51,060

**1.6411-3(d)**

NOL:51,060

**1.6411-3(d)(1)**

CONSOL:19,150

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

# EXHIBIT K

**FINAL-REG, TRC-REGS, §301.6611-1. Interest on overpayments**

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

Reg. §301.6611-1 does not reflect P.L. 96-223, P.L. 97-248, P.L. 103-66 or P.L. 105-34.

**§301.6611-1. Interest on overpayments**

(a) *General rule*. --Except as otherwise provided, interest shall be allowed on any overpayment of any tax at the annual rate referred to in the regulations under section 6621 from the date of overpayment of the tax.

(b) *Date of overpayment*. --Except as provided in section 6401(a), relating to assessment and collection after the expiration of the applicable period of limitation, there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability (including any interest, addition to the tax, or additional amount) and the dates of payment of all amounts subsequently paid with respect to such tax liability. For rules relating to the determination of the date of payment in the case of an advance payment of tax, a payment of estimated tax, and a credit for income tax withholding, see paragraph (d) of this section.

(c) *Examples*. --The application of paragraph (b) may be illustrated by the following examples:

*Example (1)*. Corporation X files an income tax return on March 15, 1955, for the calendar year 1954 disclosing a tax liability of $1,000 and elects to pay the tax in installments. Subsequent to payment of the final installment, the correct tax liability is determined to be $900.

*Tax liability*

| | |
|---|---|
| Assessed | $1,000 |
| Correct liability | 900 |
| Overassessment | 100 |

*Record of payments*

| | |
|---|---|
| March 15, 1955 | $500 |
| June 15, 1955 | 500 |

Since the correct liability in this case is $900, the payment of $500 made on March 15, 1955, and $400 of the payment made on June 15, 1955, are applied in satisfaction of the tax liability. The balance of the payment made on June 15, 1955 ($100) constitutes the amount of the overpayment, and the date on which such payment was made would be the date of the overpayment from which interest would be computed.

*Example (2)*. Corporation Y files an income tax return for the calendar year 1954 on March 15, 1955, disclosing a tax liability of $50,000, and elects to pay the tax in installments. On October 15, 1956, a deficiency in the amount of $10,000 is assessed and is paid in equal amounts on November 15 and November 26, 1956. On April 15, 1957, it is determined that the correct tax liability of the taxpayer for 1954 is only $35,000.

*Tax liability*

| | |
|---|---|
| Original assessment | $50,000 |
| Deficiency assessment | 10,000 |
| Total assessed | 60,000 |
| Correct liability | 35,000 |
| Overassessment | 25,000 |

*Record of payments*

| | |
|---|---|
| March 15, 1955 | $25,000 |
| June 15, 1955 | 25,000 |
| November 15, 1956 | 5,000 |
| November 26, 1956 | 5,000 |

Since the correct liability in this case is $35,000, the entire payment of $25,000 made on March 15, 1955, and $10,000 of the payment made on June 15, 1955, are applied in satisfaction of the tax liability. The balance of the payment made on June 15, 1955 ($15,000), plus the amounts paid on November 15 ($5,000), and November 26, 1956 ($5,000), constitute the amount of the overpayment. The dates of the overpayments from which interest would be computed are as follows:

| *Date* | *Amount of overpayment* |
|---|---|
| June 15, 1955 | $15,000 |
| November 15, 1956 | 5,000 |
| November 26, 1956 | 5,000 |

The amount of any interest paid with respect to the deficiency of $10,000 is also an overpayment.

(d) *Advance payment of tax, payment of estimated tax, and credit for income tax withholding*. --In the case of an advance payment of tax, a payment of estimated income tax, or a credit for income tax withholding, the provisions of section 6513 (except the provisions of subsection (c) thereof), applicable in determining the date of payment of tax for purposes of the period of limitations on credit or refund, shall apply in determining the date of overpayment for purposes of computing interest thereon.

(e) *Refund of income tax caused by carryback*. --If any overpayment of tax imposed by subtitle A of the Code results from the carryback of a net operating loss, a net capital loss, an investment credit, or a work incentive (WIN) credit, such overpayment, for purposes of this section, shall be deemed not to have been made prior to the end of the taxable year in which the loss or credit arises, or, with respect to any portion of an investment credit carryback or a WIN credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made prior to the close of such subsequent taxable year.

(f) *Refund of income tax caused by carryback of foreign taxes*. --For purposes of paragraph (a) of this section, any overpayment of tax resulting from a carryback of tax paid or accrued to foreign countries or possessions of the United States shall be deemed not to have been paid or accrued before the close of the taxable year under subtitle F of the Code of 1954 in which such taxes were in fact paid or accrued.

(g) *Period for which interest allowable in case of refunds*. --If an overpayment of tax is refunded, interest shall be allowed from the date of the overpayment to a date determined by the district director or the director of the regional service center, which shall be not more than 30 days prior to the date of the refund check. The acceptance of a refund check shall not deprive the taxpayer of the right to make a claim for any additional overpayment and interest thereon, provided the claim is made within the applicable period of limitation. However, if a taxpayer does not accept a refund check, no additional interest on the amount of the overpayment included in such check shall be allowed.

(h) *Period for which interest allowable in case of credits*

(1) *General rule*. --If an overpayment of tax is credited, interest shall be allowed from the date of overpayment to the due date (as determined under subparagraph (2) of this paragraph) of the amount against which such overpayment is credited.

(2) *Determination of due date*

(i) *In general.* --The term "due date", as used in this section, means the last day fixed by law or regulations for the payment of the tax (determined without regard to any extension of time), and not the date on which the district director or the director of the regional service center makes demand for the payment of the tax. Therefore, the due date of a tax (other than an additional assessment subject to the special rule provided by subdivision (iv) of this subparagraph) is the date fixed for the payment of the tax or the several installments thereof.

(ii) *Tax payable in installments*

*(a) In general.* --In the case of a credit against a tax, where the taxpayer had properly elected to pay the tax in installments, the due date is the date prescribed for the payment of the installment against which the credit is applied.

*(b) Delinquent installment.* --If the taxpayer is delinquent in payment of an installment of tax and the notice and demand has been issued for the payment of the delinquent installment and the remaining installments, the due date of each remaining installment shall then be the date of such notice and demand.

(iii) *Tax or installment not yet due.* --If a taxpayer agrees to the crediting of an overpayment against tax or an installment of tax and the schedule of allowance is signed prior to the date on which such tax or installment would otherwise become due, then the due date of such tax or installment shall be the date on which such schedule is signed.

(iv) *Additional assessment satisfied by credit before January 1, 1958.* --In the case of a credit made before January 1, 1958, against an additional assessment, the due date of the tax satisfied by the credit is the date the additional assessment was made. For purposes of this subdivision, the term "additional assessment" means a further assessment of a tax of the same character previously paid in part, and includes the assessment of a deficiency as defined in section 6211.

(v) *Interest.* --In the case of a credit against interest that accrues for any period ending prior to January 1, 1983, the due date is the earlier of the date of assessment of such interest or December 31, 1982. In the case of a credit against interest that accrues for any period beginning on or after December 31, 1982, such interest is due as it economically accrues on a daily basis, rather than when it is assessed.

(vi) *Additional amount, addition to the tax, or assessable penalty.* --In the case of a credit against an additional amount, addition to the tax, or assessable penalty, the due date is the earlier of the date of assessment or the date from which such amount would bear interest if not satisfied by payment or credit.

(vii) *Estimated income tax for succeeding year.* --If the taxpayer elects to have all or part of the overpayment shown by his return applied to his estimated tax for his succeeding taxable year, no interest shall be allowed on such portion of the overpayment credited and such amount shall be applied as a payment on account of the estimated tax for such year or the installments thereof.

(i) [Reserved.]

(j) *Refund of overpayment.* --No interest shall be allowed on any overpayment of tax imposed by subtitle A of the Code if such overpayment is refunded --

(1) In the case of a return filed on or before the last date prescribed for filing the return of such tax (determined without regard to any extension of time for filing such return), within 45 days after such last date, or

(2) After December 17, 1966, in the case of a return filed after the last day prescribed for filing the return, within 45 days after the date on which the return is filed.

However, in the case of any overpayment of tax by an individual (other than an estate or trust and other than a nonresident alien individual) for a taxable year beginning in 1974, "60 days" shall be substituted for "45 days" each place it appears in this paragraph.

(k) *Effective date*. --Paragraphs (h)(2)(v) and (h)(2)(vi) of this section are effective for credits made on or after August 25, 1992. [Reg. §301.6611-1.]

[*T.D.* 6234, 5-21-57. *Amended by T.D.* 6425, 11-10-59; *T.D.* 6498, 10-24-60; *T.D.* 6585, 12-27-61; *T.D.* 6730, 5-7-64; *T.D.* 7301, 1-3-74; *T.D.* 7384, 10-21-75 *and T.D.* 8524, 3-2-94.]

---

*Federal Tax Service Explanations:*

**301.6611-1(B)**

PENALTY:9,102.05

**301.6611-1(D)**

PAYROLL:6,112

**301.6611-1(G)**

PENALTY:9,102.10

**301.6611-1(H)(2)**

PENALTY:9,102.15

**301.6611-1(c)**

PENALTY:9,102.05

**301.6611-1(e)**

PENALTY:9,106

© 2007, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

# EXHIBIT L

1 any part of a general adjustment overpayment which is to be refunded, (all liability existing before application of the loss must have been paid) compute interest from the date of overpayment to the schedule date;

2 any part of a general adjustment overpayment which is to be credited to unpaid tax for other years or types, compute interest from the date of overpayment to the due date of the tax to which the credit is applied (IRC Section 6611(b)(1)). (If credited to unpaid interest, penalty or addition to the tax, for another year or type, compute interest from the date of overpayment to the due date of the liability paid by credit. (IRC Section 6611(b)(1));

3 any part of a general adjustment overpayment which offsets a deficiency due to an excessive tentative carryback allowance, compute interest from the date of the general adjustment overpayment to the same date the excessive tentative carryback was allowed. (IRC Section 6611(f));

4 any part of an overpayment attributable to a carryback loss which offsets a general adjustment deficiency with an earlier due date than the overpayment. No interest is allowed. (In effect, interest is allowed, by terminating interest on the deficiency on the credit availability date of the loss year);

5 any part of an overpayment attributable to a carryback loss which offsets an excessive tentative allowance based on a loss carryback from the next year. Compute interest for tax periods ended 8209 and prior, from the due date of the loss year return to the last day of the next loss year. For return periods ended after 8209, compute interest from the due date of the loss year return to the original due date of the next loss year (IRC Section 6611(h)); and

6 any part of an overpayment attributable to a carryback loss which is to be scheduled for refund. Compute interest from the date the credit becomes available (IRC Section 6611(f) to a date as determined under IRC Section 6611(b).

(6) Reduction of Deficiency Interest

(a) When a combination of general and carryback adjustments result in a net overassessment attributable in part to each, and a deficiency was assessed at any time before the end of the loss year; interest assessed on that deficiency must first be reduced in proportion to the reduction in tax liability attributable to those general adjustments.

(b) Determine whether the deficiency interest was initially computed to a date beyond the last day of the loss year and;

1 recompute interest on this part of the deficiency to the last day of the loss year; and

2 allow the excess on a Non-Master File account on the adjustment notice. Allow the excess on a Master File account by use of TC 341.

(7) Penalties

(a) Penalties for late filing, negligence in reporting income, and fraud will not be reduced by carryback losses. In the case of an overassessment resulting from a carryback loss, when penalty has been assessed on original or additional tax, no portion of the penalty will be decreased.

(b) If part of the allowance is due to general adjustments, the ad valorem penalty, as well as deficiency interest, will be prorated and any portion of the penalty applicable to the general adjustment overassessment will be allowed (reduced) in the notice of adjustment.

# EXHIBIT M

# Instructions for Form 1139

Department of the Treasury
**Internal Revenue Service**

## (Rev. August 2006)

**Corporation Application for Tentative Refund**

Section references are to the Internal Revenue Code unless otherwise noted.

## What's New

- The domestic production activities deduction under section 199 is not allowed in figuring a corporation's NOL. See page 2 of the instructions.
- For tax years ending after 2005 and before 2009, certain electric utility companies that make capital expenditures in electric transmission property or certified pollution control facilities can elect to use a 5-year carryback period for net operating losses (NOLs) arising in tax years ending in 2003, 2004, or 2005. See page 3 of the instructions.
- A corporation can elect to treat a qualifying public utility casualty loss as a Gulf Opportunity Zone (GO Zone) public utility casualty loss. See page 3 of the instructions.
- A loss attributable to qualified timber property can be treated as a farming loss subject to a 5-year carryback period if any portion of the property is located in the GO Zone, Rita GO Zone, or Wilma GO Zone. See page 3 of the instructions.
- A 5-year carryback period applies to any portion of an NOL that is a qualified GO Zone loss. See page 4 of the instructions.
- Certain corporations can elect to use Form 1139 to deduct a public utility property disaster loss attributable to Hurricane Katrina in the 5th tax year preceding the year of the loss. The election must be made no later than December 20, 2006. See page 5 of the instructions.

## General Instructions

### Purpose of Form

A corporation (other than an S corporation) files Form 1139 to apply for a quick refund of taxes from:

- The carryback of an NOL,
- The carryback of a net capital loss,
- The carryback of an unused general business credit,
- The election to deduct a public utility property disaster loss under section 1400N(o), or
- An overpayment of tax due to a claim of right adjustment under section 1341(b)(1).

### Waiving the NOL Carryback Period

A corporation can elect to carry an NOL forward instead of first carrying it back. Make this election by attaching a statement to a timely filed tax return (including extensions) for the tax year of the NOL indicating that the corporation is electing to relinquish the entire carryback period under section 172(b)(3) for any NOLs incurred in that tax year.

If the corporation timely filed its return for the loss year without making the election, it can make the election on an amended return filed within 6 months of the due date of the loss year return (excluding extensions). Attach the election to the amended return and write "Filed pursuant to section 301.9100-2" on the election statement. File the amended return at the same address the original return was filed. Once made, the election is irrevocable.

### When To File

Generally, the corporation must file Form 1139 within 12 months of the end of the tax year in which an NOL, net capital loss, unused credit, or claim of right adjustment arose.

For an NOL that is a loss of an electric utility company arising in tax years ending in 2003, 2004, or 2005, the corporation is allowed an additional 24 months to file Form 1139.

An exception also applies for corporations filing Form 1139 to claim a tentative refund under section 1400N(o). See page 5 of the instructions.

**CAUTION** *The corporation must file its income tax return for the tax year no later than the date it files Form 1139.*

If the corporation filed Form 1138, Extension of Time for Payment of Taxes by a Corporation Expecting a Net Operating Loss Carryback, it can get an additional extension of time to pay. To do so, file Form 1139 by the last day of the month that includes the due date (including extensions) for filing the return for the tax year from which the NOL carryback arose.

**Qualified new members of a consolidated group.** The general rule above applies to the time for filing of Form 1139 by a consolidated group. However, for this purpose, a separate return year of a qualified new member (see below) that ends on the date of joining the new group is treated as ending on the same date as the end of the tax year of the consolidated group that includes the date of the end of the separate return year. If this special treatment applies, see the instructions for line 5 on page 5. A new member of a consolidated group is a qualified new member if immediately prior to becoming a new member either:

- It was the common parent of a consolidated group, or
- It was not required to join in the filing of a consolidated return.

### Where To File

File Form 1139 with the Internal Revenue Service Center where the corporation files its income tax return.

**CAUTION** *Do not file Form 1139 with the corporation's income tax return.*

### What To Attach

Attach to Form 1139 copies of the following, if applicable, for the year of the loss or credit.

- The first two pages of the corporation's income tax return.
- All Forms 8271, Investor Reporting of Tax Shelter Registration Number, attached to the corporation's tax return.
- All other forms and schedules from which a carryback results (for example, Schedule D (Form 1120), Form 3800, etc.).

Also attach to Form 1139:

- All carryback year forms and schedules for which items were refigured.
- Form 8302, Electronic Deposit of Tax Refund of $1 Million or More. Electronic deposits can be made only for a carryback year for which the refund is at least $1 million. Attach a separate form for each such carryback year.
- Any statement required to make a valid election (for example, elections

under sections 172(b)(1)(I), 1400N(j)(5), or 1400N(o)).

## Processing the Application

The IRS will process this application within 90 days of the later of:

- The date the corporation files the complete application, or
- The last day of the month that includes the due date (including extensions) for filing the corporation's income tax return for the year in which the loss or credit arose (or, for a claim of right adjustment, the date of the overpayment under section 1341(b)(1)).

The payment of the requested refund does not mean the IRS has accepted the application as correct. If the IRS later determines the claimed deductions or credits are due to an overstatement of the value of property, negligence, disregard of rules, or substantial understatement of income tax, the corporation may be assessed penalties. Interest is also charged on any amounts erroneously refunded, credited, or applied.

The IRS may need to contact the corporation or its authorized representative for more information. To designate an attorney or representative, attach Form 2848, Power of Attorney and Declaration of Representative, to Form 1139.

## Disallowance of the Application

An application for a tentative refund is not treated as a claim for credit or refund. It may be disallowed if there are any material omissions or math errors that are not corrected within the 90-day period. If the application is disallowed in whole or in part, no suit challenging the disallowance may be brought in any court. But the corporation can file a regular claim for credit or refund. See *Filing Form 1120X or Other Amended Return* below.

## Excessive Allowances

Any amount applied, credited, or refunded based on this application that the IRS later determines to be excessive may be billed as if it were due to a math or clerical error on the return.

## Filing Form 1120X or Other Amended Return

A corporation can get a refund by filing Form 1120X (or other amended return, such as an amended Form 1120-PC) instead of Form 1139. Generally, the corporation must file an amended return within 3 years after the date the return was due for the tax year in which an NOL, net capital loss, or unused credit arose (or, if later, the date the return for that year was filed).

Corporations must file Form 1120X (or other amended return) instead of Form 1139 to carry back:

- A prior year foreign tax credit released due to an NOL or net capital loss carryback, or
- A prior year general business credit released because of the release of the foreign tax credit.

For details, see Rev. Rul. 82-154, 1982-2 C.B. 394.

The procedures for processing an amended return and Form 1139 are different. The IRS is not required to process an amended return within 90 days. However, if we do not process it within 6 months from the date a corporation files it, the corporation can file suit in court. If we disallow a claim on an amended return and the corporation disagrees with that determination, the corporation must file suit no later than 2 years after the date we disallow it.

## Definitions and Special Rules

For corporations, a net operating loss (NOL) is the excess of the deductions allowed over gross income, computed with the following adjustments.

- The NOL deduction for an NOL carryback or carryover from another year is not allowed.
- The dividends-received deductions for dividends received from domestic and foreign corporations and for dividends received on certain preferred stock of a public utility are computed without regard to the limitation on the aggregate amount of deductions under section 246(b).
- The dividends-paid deduction for dividends paid on certain preferred stock of a public utility is computed without regard to the limitation under section 247(a)(1)(B).
- The domestic production activities deduction under section 199 is not allowed.

The carryback period for an NOL generally is 2 years. Special rules (discussed below) apply to the portion of an NOL attributable to:

- A specified liability loss;
- A farming loss;
- Certain losses of an electric utility company arising in tax years ending in 2003, 2004, or 2005;
- A qualified GO Zone loss;
- An eligible loss; or
- An excess interest loss.

### Specified Liability Losses

Generally, a specified liability loss is a loss arising from:

1. Product liability,
2. An act (or failure to act) that occurred at least 3 years before the beginning of the loss year and resulted in a liability under a federal or state law requiring:
   a. Reclamation of land,
   b. Decommissioning of a nuclear power plant (or any unit thereof),
   c. Dismantling of a drilling platform,
   d. Remediation of environmental contamination, or
   e. Payment under any workers compensation act.

Any loss from a liability arising from 2a through 2e, above, can be taken into account as a specified liability loss only if the corporation used an accrual method of accounting throughout the period in which the act (or failure to act) occurred. For details, see section 172(f).

To the extent an NOL is a specified liability loss, the carryback period for that part of the NOL is generally 10 years.

However, the corporation can make an irrevocable election to figure the carryback period for a specified liability loss without regard to the special 10-year carryback rule. To make the election, attach to the corporation's timely filed tax return for the loss year a statement that the corporation is electing to have the carryback period for the NOL under section 172(b)(1)(C) determined without regard to the special 10-year carryback rule. If the corporation timely filed its tax return without making the election, it can make the election on an amended return filed within 6 months of the due date of the return (excluding extensions). Attach the election to the amended return and write "Filed pursuant to section 301.9100-2" on the election statement. File the amended return at the same address used for the original return.

**Gulf Opportunity Zone (GO Zone) public utility casualty losses.** A corporation can make an irrevocable election to treat a qualifying public utility casualty loss as a GO Zone public utility casualty loss. A GO Zone public utility casualty loss is treated as a product liability loss in

determining the amount of the corporation's specified liability loss to which the 10-year carryback period applies.

A qualifying public utility casualty loss is any casualty loss of public utility property (as defined in section 168(i)(10)) located in the GO Zone if:

- The loss is allowed as a deduction under section 165, and
- The loss is by reason of Hurricane Katrina.

See section 1400N(j) for more details. Also, see Pub. 4492, Information for Taxpayers Affected by Hurricanes Katrina, Rita, and Wilma, for a list of counties and parishes included in the GO Zone.

To make the election, attach to the corporation's timely filed tax return for the loss year a statement that the corporation is electing to treat any qualifying public utility casualty loss as a GO Zone public utility casualty loss under section 1400N(j)(2)(C). If the corporation timely filed its tax return without making the election, it can make the election on an amended return filed within 6 months of the due date of the return (excluding extensions). Attach the election to the amended return and write "Filed pursuant to section 301.9100-2" on the election statement. File the amended return at the same address used for the original return. Once made, the election is irrevocable for that tax year.

CAUTION *If the corporation elects to treat a qualifying public utility casualty loss as a GO Zone public utility casualty loss, it cannot also take the loss into account in determining the portion of the corporation's NOL that qualifies for the 5-year carryback period as a qualified GO Zone loss (discussed later under* Qualified Gulf Opportunity Zone (GO Zone) Loss*). The corporation also cannot elect to deduct the loss as a disaster loss occurring in a prior tax year under sections 1400N(o) or 165(i).*

### Farming Loss

A farming loss is the smaller of:

1. The amount that would be the NOL for the tax year if only income and deductions attributable to farming businesses (as defined in section 263A(e)(4)) were taken into account, or
2. The NOL for the tax year.

To the extent the NOL is a farming loss, the carryback period is 5 years.

However, the corporation can make an irrevocable election to figure the carryback period for a farming loss without regard to the special 5-year carryback rule. To make this election, attach to the corporation's timely filed tax return for the loss year a statement that the corporation is electing to have the carryback period for the NOL under section 172(b)(1)(G) determined without regard to the special 5-year carryback rule. If the corporation timely filed its tax return without making the election, it can make the election on an amended return filed within 6 months of the due date of the return (excluding extensions). Attach the election to the amended return and write "Filed pursuant to section 301.9100-2" on the election statement. File the amended return at the same address used for the original return.

**Certain losses attributable to qualified timber property located in hurricane zones.** Income and deductions attributable to qualified timber property (as defined in section 194(c)(1)) are treated as attributable to a farming business if any portion of the property is located in the GO Zone, Rita GO Zone, or Wilma GO Zone, and the income and deductions are allocable to the part of the corporation's tax year which is after the following applicable date and before January 1, 2006.

1. August 27, 2005, if any portion of the property is located in the GO Zone.
2. September 22, 2005, if any portion of the property is located in the Rita GO Zone (but not in the GO Zone).
3. October 22, 2005, if any portion of the property is located in the Wilma GO Zone (but not in the GO Zone or the RITA GO Zone).

However, these rules apply only to a timber producer who:

1. Held qualified timber property (defined in Pub. 535, Business Expenses) on the applicable date below:

a. August 28, 2005, if any portion of the property is located in the GO Zone,
b. September 23, 2005, if any portion of the property is located in the Rita GO Zone (but not in the GO Zone), or
c. October 23, 2005, if any portion of the property is located in the Wilma GO Zone (but not in the GO Zone or the Rita GO Zone); and

2. Did not hold more than 500 acres of qualified timber property on the applicable date above.

See Pub. 4492 for the list of counties and parishes located in the GO Zone, Rita GO Zone, and Wilma GO Zone.

### Certain Losses of Electric Utility Companies Arising in Tax Years Ending in 2003, 2004, or 2005

For tax years ending after 2005 and before 2009, an electric utility company that makes capital expenditures in electric transmission property or certified pollution control facilities can elect to use a 5-year carryback period for NOLs that arise in tax years ending in 2003, 2004, or 2005. A corporation qualifies as an electric utility company if:

- With regard to electric transmission property, the corporation uses the property to transmit at 69 or more kilovolts electricity for sale, or
- With regard to certified pollution control facilities, the corporation is an electric utility company within the meaning of section 2(3) of the Public Utility Holding Company Act as in effect just prior to its repeal.

For any election year, the corporation can make an election for one or more of the eligible loss years for which the corporation has not made a previous election. The corporation can make only one election for a loss year (for example, only one election for an NOL incurred in 2003). For any election year, the maximum amount of loss year NOLs that can qualify for the 5-year carryback period under this special election is limited to 20 percent of the corporation's qualifying investment made in the tax year prior to the election year. For this purpose, a qualifying investment is the sum of the corporation's electric transmission property capital expenditures and certified pollution control facility capital expenditures. The election years generally include any tax year ending after 2005 and before 2009. However, if more than one tax year begins in the same calendar year, the corporation can treat only one of those tax years as an election year.

To make this election, include the loss on line 1a. Attach a statement that specifies the election year, the loss year(s) to which the election applies, and the amount of qualifying investment in the tax year prior to the election year. If the election applies to

more than one loss year, include a schedule on the statement allocating the 20-percent investment limitation among the losses. For more information and special rules, see section 172(b)(1)(I).

### Qualified Gulf Opportunity Zone (GO Zone) Loss

A qualified GO Zone loss is the smaller of:

1. The NOL for the tax year reduced by any specified liability loss, or

2. The total of the following deductions (to the extent they are taken into account in computing the NOL for the tax year).

a. Qualified GO Zone casualty losses (as defined in section 1400N(k)(3)).

b. Moving expenses paid or incurred after August 27, 2005, for the employment of an individual whose main home was in the GO Zone before August 28, 2005, who was unable to remain in that home because of Hurricane Katrina, and whose main job with the corporation (after the move) is in the GO Zone;

c. Temporary housing expenses paid or incurred after August 27, 2005, to house employees of the corporation whose main job location is in the GO Zone;

d. Depreciation or amortization allowable for any qualified GO Zone property (as defined in section 1400N(d)(2)) for the year placed in service (even if an election was made not to claim a special depreciation allowance for such property); and

e. Repair expenses (including expenses for the removal of debris) paid or incurred after August 27, 2005, for any damage from Hurricane Katrina to property located in the GO Zone.

The portion of an NOL that is a qualified GO Zone loss can be carried back 5 years.

A corporation can make an irrevocable election to figure the carryback period for a qualified GO Zone loss without regard to the special 5-year carryback rule. To make the election, attach to the corporation's timely filed tax return for the loss year a statement that the corporation is electing to have the carryback period for the NOL under section 1400N(k)(1)(A)(i) determined without regard to the special 5-year carryback rule. If the corporation timely filed its tax return without making the election, it can make the election on an amended return filed within 6 months of the due date of the return (excluding extensions). Attach the election to the amended return and write "Filed pursuant to section 301.9100-2" on the election statement. File the amended return at the same address used for the original return.

**CAUTION** *If a qualified GO Zone casualty loss (listed in a, above) is taken into account in computing an NOL that is treated as a qualified GO Zone loss, such casualty loss cannot also be deducted as a disaster loss occurring in a prior tax year under section 165(i).*

### Eligible Loss

To the extent the NOL is an eligible loss, the carryback period is 3 years, but only if the corporation meets the gross receipts test of section 448(c) or is engaged in the trade or business of farming (as defined in section 263A(e)(4)) for the loss year.

For a corporation, an eligible loss is any loss attributable to a Presidentially declared disaster (as defined in section 1033(h)(3)). Farming losses and qualified GO Zone losses are not eligible losses.

Only the eligible loss portion of the NOL can be carried back 3 years.

### Excess Interest Loss

If the corporation has a corporate equity reduction transaction, a different carryback period may apply. See section 172(b)(1)(E).

---

## Specific Instructions

### Address

Include the room, suite, or other unit number after the street address. If the Post Office does not deliver mail to the street address and the corporation has a P.O. box, enter the box number instead of the street address.

If the corporation receives its mail in care of a third party (such as an accountant or an attorney), enter on the street address line "C/O" followed by the third party's name and street address or P.O. box.

### Line 1a—Net Operating Loss

If the corporation is claiming a tentative refund based on the carryback of any of the NOLs discussed under *Definitions and Special Rules for Net Operating Losses (NOLs)*, include the amount of the carryback on line 1a. Attach any statements required. See *What To Attach* on page 1.

### Line 1b—Net Capital Loss

A net capital loss can be carried back 3 years and treated as a short-term capital loss in the carryback year. The net capital loss can be carried back only to the extent it does not increase or produce an NOL in the tax year to which it is carried. For special rules for capital loss carrybacks, see section 1212(a)(3).

### Line 1c—Unused General Business Credit

If a tentative refund is claimed based on a carryback of an unused general business credit (GBC), attach a copy of the appropriate credit form for the tax year in which the credit arose. Except as provided in section 39(d), an unused GBC can be carried back 1 year (3 years if the GBC arose in a tax year beginning before 1998). Refigure the credit for the carryback year on any of the following forms and attach it to Form 1139.

- Form 3800, General Business Credit.
- Form 8844, Empowerment Zone and Renewal Community Employment Credit.
- Form 8884, New York Liberty Zone Business Employee Credit (for carryback years beginning before 2005).
- Form 6478, Credit for Alcohol Used as Fuel (for carryback years beginning in 2005). (Refigure the alcohol fuel credit on Form 3800 for carryback years beginning before 2005.).
- Section B of Form 8835, Renewable Electricity, Refined Coal, and Indian Coal Production Credit (for carryback years beginning in 2004).

### Line 1d—Other

Complete line 1d if Form 1139 is filed to claim a tentative refund based on either of the following.

- A public utility property disaster loss deducted under section 1400N(o) (described below).
- An overpayment of tax due to a claim of right adjustment under section 1341(b)(1). See the instructions for line 28 on page 6.

**Election to deduct a public utility property disaster loss under section 1400N(o).** For tax years ending after August 27, 2005, a corporation can elect to deduct a disaster loss for public utility property in the 5th tax year preceding the year

of the loss. A loss eligible for this election is any loss with respect to public utility property located in the GO Zone attributable to Hurricane Katrina. Public utility property, for this purpose, is defined in section 168(i)(10), except that the property is not required to be used predominantly in a rate-regulated trade or business.

The corporation can make the election by filing Form 1139 to claim a tentative refund. Attach a statement indicating that the corporation is making the election under sections 1400N(o) and 165(i) to deduct a public utility property disaster loss in the 5th preceding tax year. Complete and attach Form 4684 and, if required, Form 4797 for the 5th preceding year. Include the loss on line 1d. Also, see the instructions for line 13 below.

The corporation can also make the election by filing a Form 1120X or other amended return for the 5th preceding tax year. The corporation should attach the same statement and forms described above that are attached to Form 1139. See *Filing Form 1120X or Other Amended Return* on page 2.

The election **must** be made by December 20, 2006.

CAUTION *An election to deduct a public utility property disaster loss in the tax year immediately prior to the tax year of the disaster instead of in the 5th preceding tax year, cannot be made on Form 1139. This election must be made by filing the corporation's return or Form 1120X (or other amended return) for the prior year and claiming the disaster loss on it. See* Filing Form 1120X or Other Amended Return, *on page 2.*

## Line 4

Foreign taxes taken as a credit in a prior year can be reduced to zero by the carryback of an NOL or a net capital loss on Form 1139. A corporation must file Form 1120X (or other amended return) instead of Form 1139 to carry back a prior year foreign tax credit released due to an NOL or net capital loss carryback. See *Filing Form 1120X or Other Amended Return* on page 2.

## Line 5

If the common parent of a consolidated group files Form 1139 to carry back a loss or credit arising in a corporation's separate return year to a year in which the corporation joined in the filing of a consolidated return, the IRS is required to send the refund for that year directly to, and in the name of, the common parent (or agent designated under Regulations section 1.1502-77(d) for the carryback year). See Regulations sections 1.1502-78(a) and (b).

If the corporation is filing Form 1139 for a short tax year created when the corporation became a qualified new member of a consolidated group (see *Qualified new members of a consolidated group* on page 1), the corporation must answer "Yes" on line 5a and enter the tax year ending date, name, and EIN of the new common parent on line 5b.

## Lines 11 through 27—Computation of Decrease in Tax

In columns (a), (c), and (e), enter the amount for the applicable carryback year as shown on your original or amended return or as adjusted by the IRS. If the IRS has not acted on an amended return, use the amounts from the amended return and attach a copy of it with "Attachment to Form 1139" written across the top.

Use columns (a) and (b), (c) and (d), or (e) and (f) to enter amounts before and after carryback for each year to which the loss is carried. Start with the earliest carryback year. Use the remaining pairs of columns for each consecutive preceding year until the loss is fully absorbed. Enter the ordinal number of years the loss is being carried back and the date the carryback year ends in the spaces provided above columns (a) and (b), (c) and (d), or (e) and (f).

For example, the loss year is the 2005 calendar year and the loss is carried back 5 years. Enter "5th" and "12/31/00" in the spaces provided above columns (a) and (b). After making the entries, it reads "5th preceding tax year ended 12/31/00."

**Note.** Additional Forms 1139 may be needed if the corporation is carrying back an NOL to more than 3 preceding tax years. On the additional forms, complete lines 11 through 27 for each additional preceding tax year as necessary. Skip lines 1 through 10 and do not sign the additional forms.

When completing lines 16 through 25, take into account any write-in amounts that may have appeared on the original return. For example, for a tax year beginning in 2005, if Form 1120, Schedule J, line 2, was increased by deferred tax under section 1291, include that amount on line 16.

## Line 11—Taxable Income From Tax Return

Enter in columns (b), (d), and (f) the amounts from columns (a), (c), and (e), respectively.

## Line 12—Capital Loss Carryback

Enter the capital loss carryback, but not more than capital gain net income. Capital gain net income is figured without regard to the capital loss carryback of the loss year or any later year. Attach a copy of Schedule D (Form 1120) for the carryback year. Enter the amount of the capital loss carryback as a positive number on line 12.

When carrying over a net capital loss to a later tax year, reduce the amount of the net capital loss that can be used in the later years by the amount of the net capital loss deductions used in the earlier years. For details, see section 1212(a)(1).

## Line 13

If the corporation is electing to carry back a public utility property disaster loss under section 1400N(o) to the 5th preceding tax year, enter the amount of the loss on the dotted line next to line 13. Subtract the carryback amount from the total for line 13. See the instructions for line 1d.

## Line 14—NOL Deduction

See *Definitions and Special Rules* on page 2 to figure the carryback period. NOLs are first applied to the earliest year in the carryback period. Any unused amount is carried to the next tax year in the carryback period. Any amount not used during the carryback period is carried forward up to 20 years.

## Line 16—Income Tax

In columns (b), (d), and (f), enter the refigured income tax after taking into account the carryback(s). See the instructions for the corporate income tax return for the applicable year for details on how to figure the tax. Attach a computation of the refigured tax. Take into account section 1561 when refiguring the income tax.

## Line 17—Alternative Minimum Tax

For columns (b), (d), and (f), refigure the alternative minimum tax.

Complete and attach Form 4626 for the appropriate year.

**Carrybacks attributable to qualified Gulf Opportunity Zone (GO Zone) losses.** If the corporation carries back any portion of an alternative tax NOL (ATNOL) based on an NOL carryback attributable to qualified GO Zone losses (as defined in section 1400N(k)(2)), the 90%-of-alternative-minimum-taxable-income (AMTI) limit does not apply to such portion of the alternative tax NOL deduction (ATNOLD). To determine the ATNOLD for the carryback year, see section 56(d)(1)(A).

## Line 19—General Business Credit

In columns (b), (d), and (f), enter the total of the corrected GBCs. Attach all Forms 3800, 8844, 6478 (for carryback years beginning in 2005), 8835 (for carryback years beginning in 2004), and 8884 (for carryback years beginning before 2005) used to redetermine the GBC.

**Released general business credits.** If an NOL carryback or a net capital loss carryback eliminates or reduces a GBC in an earlier tax year, the released GBC can be carried back 1 year (3 years if the GBC arose in a tax year beginning before 1998). See section 39 and the Instructions for Form 3800 (or Forms 8844, 6478, 8835, or 8884) for more details on GBC carrybacks.

## Line 20—Other Credits

See the corporation's tax return for the carryback year for any additional credits such as the nonconventional source fuel credit, the possessions tax credit, etc., that will apply in that year. If any entry is made on line 20, attach a statement identifying the credits claimed.

## Line 24—Other Taxes

For columns (b), (d), and (f), refigure any other taxes not mentioned above, such as recapture taxes, that will apply in that year. If an entry is made on line 24, identify the taxes on an attached statement.

## Line 28—Overpayment of Tax Under Section 1341(b)(1)

For a tentative refund based on an overpayment of tax under section 1341(b)(1), enter the overpayment on line 28 and attach a computation showing the information required by Regulations section 5.6411-1(d).

**Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. You are required to give us the information. We need it to ensure that you are complying with these laws and to allow us to figure and collect the right amount of tax.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is:

| | |
|---|---|
| **Recordkeeping** | 27 hr., 1 min. |
| **Learning about the law or the form** | 3 hr., 43 min. |
| **Preparing the form** | 8 hr., 59 min. |
| **Copying, assembling, and sending the form to the IRS** | 1 hr., 20 min. |

If you have comments concerning the accuracy of these time estimates or suggestions for making this form simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6406, Washington, DC 20224. Do not send the form to this office. Instead, see *Where To File* on page 1.

# EXHIBIT N

# ARGUMENT

I. Section 6611 of the Code provides for the allowance and payment of interest on an overpayment created by the application of a credit carryback from the taxpayer's 1984 Tax Year to its the 1981 Tax Year. An overpayment for an interim period attributable to the application of the credit carryback began on the filing date of the taxable year in which such credit carryback arose (March 15, 1985) and ended on the date the account went into deficiency status (September 27, 1985).

Section 6611(a) of the Code states, "[i]**interest shall be allowed and paid upon any overpayment** in respect of any internal revenue tax at the overpayment rate established under section 6621." I.R.C. § 6611(a)(1997). The term "overpayment" has been judicially defined as "any payment in excess of that which is properly due." Jones v. Liberty Glass Co., 332 U.S. 524, 531 (1947)(Emphasis added). The Supreme Court in Jones stated:

> Such an excess payment may be traced to an error in mathematics or in judgment or in interpretation of facts or law. And the error may be committed by the taxpayer or by the revenue agents. Whatever the reason, the payment of more than is rightfully due is what characterizes an overpayment.

Jones, 332 U.S. at 531.[1] Recognizing that a taxpayer's account typically fluctuates between periods of overpayment and underpayment, the Code, Treasury Regulations and Service pronouncements promulgated pursuant thereto, provide specific provisions for determining the boundaries of such periods, and the calculation of applicable interest thereon. In that regard, and

---

[1] See also, United States v. Dalm, 494 U.S. 596 (1990); Connecticut Light & Power Co. v. Commissioner, 40 T.C. 597 (1963). Section 6401 of the Code provides a partial definition of the *(footnote cont'd...)*

as it relates to the present facts, the following questions must be answered: (i) whether a credit carryback from the taxpayer's 1984 Tax Year applied to its 1981 Tax Year resulted in an overpayment in the 1981 Tax Year, and if so, for what period[s] of time; (ii) what measurement is to be used to compute the allowable interest on such overpayment[s]; and, (iii) how and/or where should the allowable interest be applied.

Section 6611(f)(2)(A) of the Code in effect for 1997,[2] states:

> IN GENERAL.--For purposes of subsection (a), if any overpayment of tax imposed by subtitle A results from a credit carryback, such overpayment shall be deemed not to have been made before the filing date for the taxable year in which such credit carryback arises, or, with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made before the filing date for such subsequent taxable year.

Treasury Regulation §301.6611-1(e) (1997) states:

> (e) *Refund of income tax caused by carryback.* If any overpayment of tax imposed by subtitle A of the Code results from the carryback of a net operating loss, a net capital loss, an investment credit, or a work incentive (WIN) credit, such overpayment, for purposes of this section, shall be deemed not to have been made prior to the end of the taxable year in which the loss or credit arises, or, with respect to any portion of an investment credit carryback or a WIN credit carryback from a taxable year attributable to a net operating loss carryback or a capital loss carryback from a subsequent taxable year, such overpayment shall be deemed not to have been made prior to the close of such subsequent taxable year.

---

term "overpayment," however, that definition is in the context of late assessments and collections and therefore is not relevant to the present discussion.

2 Currently, §6611(f)(3)(A)(2005). Unless otherwise stated, Code sections cited in Plaintiff's Brief are hereinafter referenced to the version in effect on May 19, 1997 - the date the Service last posted tax and interest.

Section 6611(f)(2)(B) of the Code[3] states, "the term "credit carryback" has the meaning given such term by section 6511(d)(4)(C)" – that being "any business carryback under section 39." Section 6611(f)(3)(A) of the Code[4] states, "the term "filing date" means the last date prescribed for filing the return of tax imposed by subtitle A for the taxable year (determined without regard to extensions)." For Coca-Cola's 1984 Tax Year return, the filing date for purposes of section 6611(f)(3)(A) was March 15, 1985.

On or about April 8, 1991, Coca-Cola filed a Form 1120X – "Amended U.S. Corporation Income Tax Return" (the "Form 1120X" or the "Refund Claim," attached as Exhibit 2 to Jt. Stip.) seeking a correction ($13,401,156) to the Service's recapture of an investment tax credit from the 1984 Tax Year. In particular, the Refund Claim requested a refund of $13,086,842 from the 1981 Tax Year. The Refund Claim culminated in the Tax Court's Stipulated Decision that reads in part, "after taking into account business credit carrybacks from the taxable year 1984, there is an overpayment in income tax for the taxable year 1981 in the amount of $12,352,648 …"

Pursuant to §6611(f)(2)(A), the overpayment created in the 1981 Tax Year by the application of the carryback is deemed not to have been made before March 15, 1985, the filing date for the taxable year [1984] in which such credit carryback arose. In this instance, the record reveals that an overpayment in fact was created as of March 15, 1985, as indicated by a work

---

3 I.R.C. § 6611(f)(2)(B)(1997); currently, §6611(f)(3)(B)(2005).

4 I.R.C. § 6611(f)(3)(A)(1997); currently, §6611(f)(4)(A)(2005).

paper furnished by the Service.[5] The work paper represents the Service's calculation of the actual tax and interest abatement amounts posted to the Transcript on May 19, 1997. The Tax Court's "overpayment" amount of $12,352,648, appears as a line entry [referred to as "New Adj."] above the line labeled "Balance on 3-15-85[,]" and is included in the computation that nets the "Balance Due 9-27-85." This evidences that the Service considered the credit carryback effective, and the overpayment in the 1981 Tax Year created, as of March 15, 1985.

But for the application of the credit carryback as of March 15, 1985, the account could not have been in overpayment status on that, or subsequent dates.[6] This is proven mathematically by a software program that replicates the methodology utilized by the Service in computing interest (the "Activity Summary" attached as Exhibit H to Affidavit). The recreation was performed on the commonly used software program: "InterestNet" by Decision Modeling, Inc. (a version of which is the primary tool used by the Internal Revenue Service for interest and

---

5 See IRS Recomputation of Revenue Agent Jeanenne Z. Godsey, attached as Exhibit E to Affidavit.

6 In The Coca-Cola Co., and Includable Subsidiaries v. Commissioner of Internal Revenue, [Docket No. 17171-91] (the "Tax Court Decision")(attached as Exhibit 3 to the Joint Stipulation of Facts), the Court stated, "[t]hat after taking into account business credit carrybacks from the taxable year 1984, there is an overpayment in income tax for the taxable year 1981 in the amount of $12,352,648, which amount was paid on October 27, 1987, and March 15, 1990." The Tax Court Decision does not recite the effective date of the overpayment, however, the inclusion of the $12,352,648 as of March 15, 1985 nets the proper balance on March 15, 1990, as discussed in the body of this Brief. The parties in this action have stipulated that "as a result of the Decision and the abatements of tax and interest…, an overpayment existed in Company's 1981 Federal income tax account in the amount of $11,855,397.47 as of March 15, 1990." Jt. Stip. ¶ 16. The disparity between the two March 15, 1990 balance amounts is attributable to the inclusion of other postings of interest in the parties' computation; an aspect not reflected in the Tax Court's decision.

interest netting calculations)[7] and reflects the running balances in the account. The upper portion of the recreation duplicates the Transcript's entries of tax assessments, tax abatements, payments, credits, refunds of interest and payments of interest. The lower portion supplements the upper portion with the inclusion of interest adjustments, recreated utilizing the same methodology that is utilized by the Service in its computations [those reflected on an IRS Transcript]. As it applied to this case, the Activity Summary's cumulative postings of interest differ from the Transcript's cumulative postings of interest by a mere $30.25 as of March 15, 1990, and $72.30 as of April 11, 2003. The Activity Summary reflects the Transcript's posting of the Tax Court's $12,352,648.00 determined amount. The Transcript posts the $12,352,648.00 as a Transaction Code ("TC") 301 ("Abatement of Tax" as defined in the Internal Revenue Manual). Applying this adjustment as of March 15, 1985 on the Activity

---

7 The currently supported IRS interest software are InterestNet by Decision Modeling, Inc. and IDRS Command Codes (e.g., CC COMPA). This software will be used in all training material and exhibits and will be the only software sanctioned for use throughout the Service.

> Until InterestNet is available to all interest technicians, the IRS developed software, Total Interest Program System (TIPS), as well as some commercial off the shelf (COTS) software programs, such as "TaxInterest" may be used to manually compute interest. All of these programs provide the same `bottom line' debit or credit interest amount (within pennies) if the module information is input correctly.

I.R.M. § 20.2.6.4 (03-01-2002)(emphasis supplied).

> Automated Computational Tool (ACT) is a cross functional interest and penalty computational tool utilized by all offices of the Service that includes Net Rate interest netting. The Automated Computational Tool (ACT) is a commercial off the shelf (COTS) software program, InterestNet, developed by Decision Modeling Incorporated (DMI) and customized for the Internal Revenue Service (IRS). The InterestNet program is available to the general public where the version of the InterestNet software referred to as ACT is only available to the IRS. The program is used by all Business Operating Divisions (BOD's) and functions service wide.

Website: IRS.gov http://www.irs.gov/privacy/article/ 0,,id=128600,00.html (emphasis supplied).

Summary creates an overpayment in the 1981 Tax Year account in the amount of $11,031,849.62 as of March 15, 1985. The overpayment remained in the account until $18,682,973 was refunded on September 27, 1985. Again, by entering the Transcript's amounts of tax assessments, tax abatements, payments, credits and refunds into the program (including the Tax Court's adjustment of $12,352,648 as of March 15, 1985), the program virtual replicates the interest amounts appearing on the Transcript of Account (within $30.25). This validates the fact that the Service did apply the credit carryback from the 1984 Tax Year to the 1981 Tax Year as of March 15, 1985. It also establishes that the 1981 tax account remained in overpayment status from March 15, 1985 to September 27, 1985.

Having confirmed the start and end dates of the interim overpayment, interest is computed at the overpayment rate established under Code section 6621. I.R.C. § 6611(a)(1997). As to how and where the allowable interest is applied, Revenue Procedure 60-17, 1960-2 C.B. 942, lends direction. Drafted before Congress' enactment (T.E.F.R.A.) of the compounding provisions,[8] yet, in part, a current Service pronouncement, section 3.01(2)(b) of the Revenue Procedure states that "interest [due the taxpayer] computed on overpayments for the same taxable period which are not to be scheduled *** is deducted from the interest due the government ..." Applied to the facts and relevant dates of the present case, and accounting for Congress' implementation of interest compounding (both deficiency and allowable) after

---

[8] P.L. 97-248, §344(a): Tax Equity and Fiscal Responsibility Act of 1982, Enacted September 3, 1982; codified as I.R.C. §6622. Section 6622(a) states that "[i]n computing the amount of any interest required to be paid..., by the Secretary or by the taxpayer or any other amount determined by reference to such amount of interest, such interest and such amount shall be compounded daily."

December 31, 1982, the logical interpretation of this provision of the Revenue Procedure is to deduct the interest computed on the overpayment from the tax – principal. Today, this methodology is commonly practiced by the Service and in accord with current Service policy. See, Revenue Procedure 2002-26, Section 3.02, 2002-15 I.R.B. 746 (April 15, 2002) ("If the amount applied to a period is less than the liability for the period, the amount will be applied to tax, penalty, and interest, in that order, until the amount is absorbed."). Calculating the interim overpayment interest pursuant to this methodology nets an amount of $739,954.49. (See Activity Graph and schedule, attached as Exhibit I to Affidavit). Applied to the 1981 Tax Year account as of September 27, 1985 [after the $18,682,973 refund] results in a recomputed tax deficiency of $6,911,168.89, versus the Service's computation of $7,651,123.38.

II. The revocation and recapture of a previously-paid tentative allowance terminates the interest-free period associated with it.

It is not disputed that an overpayment existed in the 1981 income tax account from March 15, 1985 to September 27, 1985. The Service's work paper and the Activity Summary attest to this fact. Defendant, however, contends that the usual rule of Code § 6611, providing for the payment of allowable interest on "any overpayment," does not apply in this situation because plaintiff filed an application for a tentative carryback adjustment under Code § 6411. It is undisputed that Coca-Cola did file a Form 1139 requesting tentative carryback adjustment from 1984, and that this adjustment was paid on or about September 27, 1985. However, it is likewise undisputed that the tentative carryback adjustment, after an audit, was reversed and repaid to the Service with interest. The overpayment finally determined in the 1981 tax account

# EXHIBIT O

# 490 Activity Summary - The Coca-Cola Company

FED - 58-0628465 The Coca-Cola Company 1120 Tax Period: 1981/12

| | | | |
|---|---|---|---|
| Run Method: | IRS Default | Module Status: | Open/(Open) |
| Interest To: | 04/11/2003 | | |
| GATT Method: | Do Not Retain Character (Old) | GATT Date: | 01/01/1995 Amount: $10,000 |
| LCU Method: | Default IRS | LCU Interest Date: | LCU Interest is OFF |
| Underpay Net Start: | All Dates Included | Overpay Net Start: | All Dates Included |

| Date Transcript | Date Start | Date Adj / End | Description | Susp/Equal | Principal | Balance |
|---|---|---|---|---|---|---|
| 10/27/1987 | | 03/15/1982 | 300 Additional Tax Assessment By Exa | | 8,967,196.00 | 8,967,196.00 |
| 01/23/1991 | | 03/15/1982 | 301 Abatement of Tax By Examination | | (952,336.00) | 8,014,860.00 |
| 10/27/1987 | | 03/15/1983 | 309 Abatement of Prior Tax Assessmen | | (775,370.00) | 7,239,490.00 |
| 02/24/1984 | | 02/24/1984 | 640 Advance Payment of Determined De | | (986,054.19) | 6,253,435.81 |
| 12/10/1984 | | 03/15/1984 | 295 Abatement of Tax with Interest C | | (7,606,600.00) | (1,353,164.19) |
| 01/23/1991 | | 03/15/1984 | 309 Abatement of Prior Tax Assessmen | | (1,722,916.00) | (3,076,080.19) |
| 04/08/1985 | | 10/15/1984 | 295 Abatement of Tax with Interest C | | (1,114,752.00) | (4,190,832.19) |
| 11/09/1984 | 03/15/1984 | 11/09/1984 | 840 Manual Refund | (7,606,600.00) | 7,606,600.00 | 3,415,767.81 |
| 02/21/1985 | 10/15/1984 | 02/21/1985 | 840 Manual Refund | (1,114,752.00) | 1,114,752.00 | 4,530,519.81 |
| 10/21/1985 | | 03/15/1985 | 295 Abatement of Tax with Interest C | | (18,682,973.00) | (14,152,453.19) |
| 01/23/1991 | | 03/15/1985 | 308 Additional Tax Assessment with I | | 12,448,079.00 | (1,704,374.19) |
| 05/19/1997 | | 03/15/1985 | 301 Abatement of Tax By Examination | | (12,352,648.00) | (14,057,022.19) |
| 09/27/1985 | 03/15/1985 | 09/27/1985 | 840 Manual Refund | (18,682,973.00) | 18,682,973.00 | 4,625,950.81 |
| 10/27/1987 | | 10/27/1987 | 670 Subsequent Payment | | (10,677,599.17) | (6,051,648.36) |
| 10/27/1987 | | 10/27/1987 | 670 Subsequent Payment | | (5,317,121.96) | (11,368,770.32) |
| [illegible]7/1987 | | 10/27/1987 | 670 Subsequent Payment | | (712,094.04) | (12,080,864.36) |
| [illegible]27/1987 | | 10/27/1987 | 672 Correction of 670 Processed in E | | 5,317,121.96 | (6,763,742.40) |
| 10/27/1987 | | 10/27/1987 | 672 Correction of 670 Processed in E | | 712,094.04 | (6,051,648.36) |
| 11/09/1989 | | 11/09/1989 | 840 Manual Refund | | 1,637,943.55 | (4,413,704.81) |
| 11/20/1989 | | 11/20/1989 | 1003 Refund Interest | | 12,159.50 | (4,401,545.31) |
| 03/15/1990 | | 03/15/1990 | 700 Credit Applied | | (11,855,397.47) | (16,256,942.78) |
| 03/15/1990 | | 03/15/1990 | 820 Credit Transferred | | 11,855,397.47 | (4,401,545.31) |

| Date | | Description | Amount | Factor | Interest | Balance |
|---|---|---|---|---|---|---|
| 03/15/1982 | | 300 Additional Tax Assessment By Exa | 8,967,196.00 | | | |
| | | 301 Abatement of Tax By Examination | (952,336.00) | | | 8,014,860.00 |
| 03/16/1982 | 12/31/1982 | Underpay | 8,014,860.00 | 0.159452055 | 1,277,985.90 | 9,292,845.90 |
| 01/01/1983 | 03/15/1983 | Underpay | 9,292,845.90 | 0.032962873 | 306,318.90 | 9,599,164.79 |
| 03/15/1983 | | 309 Abatement of Prior Tax Assessmen | (775,370.00) | | | 8,823,794.79 |
| 03/16/1983 | 02/24/1984 | Underpay | 8,823,794.79 | 0.126217986 | 1,113,721.61 | 9,937,516.40 |
| 02/24/1984 | | 640 Advance Payment of Determined De | (986,054.19) | | | 8,951,462.21 |
| 02/25/1984 | 03/15/1984 | Underpay | 8,951,462.21 | 0.006028122 | 53,960.51 | 9,005,422.72 |
| 03/15/1984 | | 295 Abatement of Tax with Interest C | (7,606,600.00) | | | |
| | | 309 Abatement of Prior Tax Assessmen | (1,722,916.00) | | | (324,093.28) |
| 03/16/1984 | 10/15/1984 | Overpay Suspended | (324,093.28) | | | (324,093.28) |
| 10/15/1984 | | 295 Abatement of Tax with Interest C | (1,114,752.00) | | | (1,438,845.28) |
| 10/16/1984 | 11/09/1984 | Overpay Suspended | (1,438,845.28) | | | (1,438,845.28) |
| 11/09/1984 | | 840 Manual Refund | 7,606,600.00 | | | 6,167,754.72 |
| 11/10/1984 | 02/21/1985 | Underpay | 6,167,754.72 | 0.034732892 | 214,223.96 | 6,381,978.68 |
| [illegible]1/1985 | | 840 Manual Refund | 1,114,752.00 | | | 7,496,730.68 |
| [illegible]2/1985 | 03/15/1985 | Underpay | 7,496,730.68 | 0.007864989 | 58,961.71 | 7,555,692.38 |
| 03/15/1985 | | 295 Abatement of Tax with Interest C | (18,682,973.00) | | | |
| | | 301 Abatement of Tax By Examination | (12,352,648.00) | | | |
| | | 308 Additional Tax Assessment with I | 12,448,079.00 | | | (11,031,849.62) |
| 03/16/1985 | 09/27/1985 | Overpay Suspended | (11,031,849.62) | | | (11,031,849.62) |
| 09/27/1985 | | 840 Manual Refund | 18,682,973.00 | | | 7,651,123.38 |

## 490 Activity Summary - The Coca-Cola Company

FED - 58-0628465 The Coca-Cola Company 1120 Tax Period: 1981/12

| Date | | Description | Amount | Factor | Interest | Balance |
|---|---|---|---|---|---|---|
| 09/28/1985 | 10/27/1987 | Underpay | 7,651,123.38 | 0.219298095 | 1,677,876.78 | 9,329,000.16 |
| 10/27/1987 | | 670 Subsequent Payment | (5,317,121.96) | | | |
| | | 670 Subsequent Payment | (712,094.04) | | | |
| | | 670 Subsequent Payment | (10,677,599.17) | | | |
| | | 672 Correction of 670 Processed in E | 712,094.04 | | | |
| | | 672 Correction of 670 Processed in E | 5,317,121.96 | | | (1,348,599.01) |
| 10/28/1987 | 11/09/1989 | Overpay | (1,348,599.01) | 0.223562881 | (301,496.68) | (1,650,095.68) |
| 11/09/1989 | | 840 Manual Refund | 1,637,943.55 | | | (12,152.13) |
| 11/10/1989 | 11/20/1989 | Overpay | (12,152.13) | 0.003017830 | (36.67) | (12,188.81) |
| 11/20/1989 | | 1003 Refund Interest | 12,159.50 | | | (29.31) |
| 11/21/1989 | 03/15/1990 | Overpay | (29.31) | 0.032003991 | (0.94) | (30.25) |
| 03/15/1990 | | 700 Credit Applied | (11,855,397.47) | | | |
| | | 820 Credit Transferred | 11,855,397.47 | | | (30.25) |
| 03/16/1990 | 12/31/1994 | Overpay | (30.25) | 0.447279249 | (13.53) | (43.77) |
| 01/01/1995 | 04/11/2003 | Overpay | (13.53) | 0.796706389 | (10.78) | |
| | | Overpay GATT | (30.25) | 0.586969197 | (17.75) | (72.30) |

| Account Summary: | As Computed | Per Transcript | Adjustment |
|---|---|---|---|
| Deficiency Interest | 4,703,049.35 | 4,703,042.36 | 6.99 |
| Overpayment Interest | (301,576.35) | (301,497.05) | (79.30) |
| Principal Balance | | | 0.01 |
| | 4,401,473.00 | 4,401,545.31 | (72.30) |