No. 03-1155T
(The Honorable Lawrence J. Block)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE COCA-COLA COMPANY AND SUBSIDIARIES,

Plaintiffs

v.

THE UNITED STATES,

Defendant

# PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Plaintiff, The Coca-Cola Company and Subsidiaries, pursuant to Rule 56(h)(2) of the Rules of The United States Court of Federal Claims, respectfully provides these responses to defendant's proposed findings of uncontroverted fact.

1. Taxpayer timely (pursuant to an extension) filed its return with respect to calendar 1981 on or about September 13, 1982. Joint Stipulation of Facts (hereafter "Stip.") ¶ 7;

Declaration of Connie Stegan McDonald (hereafter "McDonald Declaration"), attached hereto as Exhibit A, ¶ 5.

PLAINTIFF'S RESPONSE: AGREES

2. The return reported a liability of $89,332,282, not all of which had been paid when due, on March 15, 1982. McDonald Declaration ¶ 6.

PLAINTIFF'S RESPONSE: AGREES

3. After adjustments reducing the tax liability by $119,636, and payment of underpayment interest of $145,946.68 in September, 1983, and $70,085.60 in April, 1984, the account balance for the plaintiff's 1981 income tax year became zero. McDonald Declaration ¶ 7.

PLAINTIFF'S RESPONSE: **DISAGREES.** This proposed finding is incomplete, misleading and vague. The defendant has omitted facts that might be confirmed by reference to an objective source such as the transcript of account for plaintiff's Federal Income Tax (Forms 1120) for the 1981 Tax Year [dated January 2, 2003] (the "Transcript")(attached as Exhibit #1 to the Joint Stipulation of Facts filed July 14, 2005). Further, plaintiff does not necessarily agree that defendant's characterization of the account becoming "zero" is entirely correct because it (i) fails to specify a specific date, and, (ii) fails to consider the application of the earlier effective date(s) of adjustments which chronologically posted to the Transcript after the adjustments referenced above. Plaintiff **OBJECTS** to the proposed finding as it is written and suggests the following revision: After payments of $9,200,000 on or about June 15, 1982, $1,318,484 on or about September 15, 1982, adjustments reducing the tax liability by $119,636, and payments of underpayment interest of $145,946.68 in September, 1983, and $70,085.60 in April, 1984, the

account balance for the plaintiff's 1981 income tax year, notwithstanding the effect of later postings to the Service's transcript of account for plaintiff's Federal Income Tax (Forms 1120) for the 1981 Tax Year, became zero.

4. In November 1984, taxpayer filed a Form 1139, "Corporation Application for a Tentative Refund," seeking a refund of 1981 income tax of $7,606,600, based on carrybacks from 1983. McDonald Declaration ¶ 8.

PLAINTIFF'S RESPONSE: **DISAGREES**. Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." This proposed finding sets out no matter of fact that is actually material to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material.

5. This refund was paid within 45 days of the date of the claim, without interest. McDonald Declaration ¶ 9.

PLAINTIFF'S RESPONSE: **DISAGREES**. Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." This proposed finding sets out no matter of fact that is actually material to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material. Plaintiff further **OBJECTS** to defendant's use of the term "refund" instead of the term "tentative carryback adjustment" or "tentative refund." As articulated in Plaintiff's Brief in Support of its Motion for Summary Judgment, and Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment filed contemporaneously with plaintiff's response hereto, plaintiff draws a distinction between the procedural rights attendant a formal claim for refund versus those attendant an "application" for

a tentative carryback adjustment such as a Form 1139. In particular, plaintiff's briefs cite the Instructions for Form 1139 that state, "[a]n application for a tentative refund is not treated as a claim for credit or refund." As a consequence, defendant's statement that a "refund" was paid may be interpreted as setting out defendant's legal conclusion with respect to a question presented by this case, and is not a matter of fact, but an opinion as to a matter of law. *See, for example, United States v. Feliciano, aka Rude Dog, etc.*, 223 F.3d 102, 121 (2d Cir. 2000).

6. In January 1985, taxpayer filed yet another Form 1139, seeking a carryback refund of 1981 income tax of $1,114,752, based on carrybacks from 1984. McDonald Declaration ¶ 10.

PLAINTIFF'S RESPONSE: **DISAGREES**. Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." This proposed finding sets out no matter of fact that is actually material to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material.

7. This refund was paid within 45 days of the date of the claim, without interest. McDonald Declaration ¶ 11.

PLAINTIFF'S RESPONSE: **DISAGREES**. Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." This proposed finding sets out no matter of fact that is actually material to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material. Plaintiff further **OBJECTS** to defendant's use of the term "refund" instead of the term "tentative carryback adjustment" or "tentative refund." As articulated in Plaintiff's Brief in Support of its Motion for Summary Judgment, and Plaintiff's

Brief in Opposition to Defendant's Cross-Motion for Summary Judgment filed contemporaneously with plaintiff's response hereto, plaintiff draws a distinction between the procedural rights attendant a formal claim for refund versus those attendant an "application" for a tentative carryback adjustment such as a Form 1139. In particular, plaintiff's briefs cite the Instructions for Form 1139 that state, "[a]n application for a tentative refund is not treated as a claim for credit or refund." As a consequence, defendant's statement that a "refund" was paid may be interpreted as setting out defendant's legal conclusion with respect to a question presented by this case, and is not a matter of fact, but an opinion as to a matter of law. *See, for example, United States v. Feliciano, aka Rude Dog, etc.,* 223 F.3d 102, 121 (2d Cir. 2000).

8. On September 16, 1985, plaintiff filed a third Form 1139, this time seeking a refund of $18,682,973, generated by additional carrybacks to 1981 from 1984. Stip. ¶ 8; McDonald Declaration ¶ 12.

PLAINTIFF'S RESPONSE: **AGREES IN SUBSTANCE; DISAGREES WITH SPECIFICS AND AUTHORITY**. Whereas plaintiff has stipulated that a Form 1139 for 1981 was filed, plaintiff lacks knowledge as to the exact filing date. To the extent that defendant based its proposed finding as to the exact date upon Stipulation #8, plaintiff **OBJECTS**. To the extent that defendant's declarant utilized a date assigned to the Transcript "CREDIT DT" to support its proposed finding, plaintiff **OBJECTS** as it is written in that a credit date is not necessarily the filing date. Without seeing the actual return (Form 1139) filed, plaintiff cannot affirm or deny that the return was actually filed on September 16, 1985. Plaintiff suggests the insertion of the words "or about" immediately preceding the date, "September 16, 1985."

9. This refund was paid on September 27, 1985, within 45 days of the filing of the claim, without interest. Stip. ¶ 8; McDonald Declaration ¶ 13.

PLAINTIFF'S RESPONSE: **DISAGREES**. In this proposed finding, plaintiff does not agree with defendant's characterization of the taxpayer's Form 1139, "Corporation Application for Tentative refund" as a "claim," nor does it agree with defendant's characterization of the Service's payment as a "refund" rather than as a "tentative refund." Plaintiff **OBJECTS** in that it did not stipulate to these terms in the Joint Stipulation of Facts. Stip. ¶ 8. As articulated in Plaintiff's Brief in Support of its Motion for Summary Judgment, and Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment filed contemporaneously with plaintiff's response hereto, plaintiff draws a distinction between the procedural rights afforded a taxpayer by a formal claim for refund versus those attendant an "application" for a tentative carryback adjustment. As a consequence, defendant's characterization of the IRS' September 27, 1985 payment as a "refund" based upon a "claim" may be interpreted as setting out defendant's legal conclusion with respect to a question presented by this case, and is not a matter of fact, but an opinion as to a matter of law. *See, for example, United States v. Feliciano, aka Rude Dog, etc.,* 223 F.3d 102, 121 (2d Cir. 2000).

10. Coca-Cola's 1981 taxes had been under audit since June of 1983. McDonald Declaration ¶ 14.

PLAINTIFF'S RESPONSE: **DISAGREES**. Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." This proposed finding sets out no matter of fact that is actually material to the instant suit. Plaintiff **OBJECTS** to being required to respond to

allegations that are not material. Plaintiff further **OBJECTS** in that defendant's authority (the McDonald Declaration) does not identify the specific source of her conclusions.

11. In October of 1987, the Internal Revenue Service assessed a tax deficiency in the amount of $8,191,826, along with deficiency interest in the amount of $7,802,895 (for a total of $15,994,721). Stip. ¶ 9; McDonald Declaration ¶ 15.

PLAINTIFF'S RESPONSE: AGREES.

12. The deficiency consisted of [sic] general adjustment increasing plaintiff's taxes by $8,967,196, and allowance of an additional carryback to 1981 from 1982, decreasing plaintiff's 1981 tax in the amount of $775,370. McDonald Declaration ¶ 16.

PLAINTIFF'S RESPONSE: AGREES

13. This tax deficiency and the deficiency interest was [sic] satisfied by plaintiff with a payment of $15,994,721 on October 27, 1987. Stip. ¶ 9; McDonald Declaration ¶ 17.

PLAINTIFF'S RESPONSE: AGREES

14. In January of 1990, the Commissioner commenced an audit of plaintiff's 1981 tax liability, which reviewed, among other things, the amount and correctness of the carrybacks from 1984 to 1981. McDonald Declaration ¶ 18.

PLAINTIFF RESPONSE: **AGREES IN SUBSTANCE; DISAGREES WITH SPECIFICS AND AUTHORITY**. To the extent that the Commissioner commenced an audit of plaintiff's 1981 tax liability in January of 1990, plaintiff **OBJECTS** in that defendant's authority

(the McDonald Declaration) does not identify the specific source of her conclusion regarding this proposed finding. Consequently, plaintiff cannot confirm the validity of that portion of the proposed finding. To the extent that an audit of plaintiff's 1981 Tax Year federal income tax liability was performed that reviewed the correctness of the carrybacks from 1984 to 1981, plaintiff agrees.

15. The examination resulted in a net tax assessment of $9,772,827, which was comprised of three parts: there was a reduction in the amount of the carryback allowed to 1981 from 1984, resulting in a tax *increase* of $12,448,079; there was a general adjustment *reducing* plaintiff's tax liability by $952,336; there was an increase in the amount of the carryback allowed from 1983 to 1981, resulting in a tax *decrease* of $1,722,916. Finally [sic], Stip. ¶ 11; McDonald Declaration ¶ 19.

PLAINTIFF RESPONSE: AGREES.

16. This net tax deficiency, along with deficiency interest of $3,780,718, was assessed on January 23, 1991. Stip. ¶ 11; McDonald Declaration ¶ 20.

PLAINTIFF RESPONSE: AGREES.

17. The deficiency assessed in January 1991 was satisfied by transferring into the account an overpayment credit from 1980 in the amount of $986,054.19, another overpayment credit from 1980 in the amount of $712,094.04 (which had been paid on October 27, 1987), and an overpayment credit from 1984 in the amount of $11,855,397.47( which had been paid on March 15, 1990). Stip. ¶ 11. These last two amounts ($712,094.04, originally paid with respect

to 1980, and $11,855,397.47, originally paid with respect to 1984), would later be transferred out of the account (and applied to plaintiff's tax liability for 1982) when the Service's deficiency assessment was almost entirely reversed, as set out below. McDonald Declaration ¶ 21.

PLAINTIFF'S RESPONSE: **DISAGREES IN PART**. Plaintiff **OBJECTS** to the defendant's depiction of the movement of money into and out of the 1981 Tax Year account in that it does not accurately reflect the record as reported in the Transcript. The parties stipulated that $986,054.19 in the 1980 Tax Year account was "transferred" to the 1981 account. The Transcript also states that the $986,054.19 was originally paid on February 24, 1984. Although the funds did not reach the 1981 Tax Year account until cycle 9106, the Transcript still posts the payment as a payment to the 1981 Tax Year account, not the 1980 Tax Year account. In essence, this money remained in the wrong account for years.

18. On May 30, 1991, the Commissioner issued a Notice of Deficiency with respect to plaintiff's taxes for 1981, 1983 and 1984. McDonald Declaration ¶ 22.

PLAINTIFF'S RESPONSE: **DISAGREES**. Plaintiff **OBJECTS** in that defendant's authority (the McDonald Declaration) does not identify the specific source of her conclusions. Consequently, plaintiff cannot confirm or deny the validity or specificity of the proposed finding.

19. The Notice proposed various substantive adjustments to plaintiff's taxes for 1983 and 1984, and affected the year in issue, 1981, only insofar as those adjustments to 1984 reduced carrybacks which plaintiff had claimed (and had been allowed) from 1984 to 1981. McDonald Declaration ¶ 23.

PLAINTIFF'S RESPONSE: **DISAGREES**. Plaintiff **OBJECTS** in that defendant's authority (the McDonald Declaration) does not identify the specific source of her conclusions. Consequently, plaintiff cannot confirm or deny the validity of the proposed finding.

20. As a result of the reduced carryback, the Notice proposed a deficiency in tax with respect to 1981 in the amount of $6,234,894. McDonald Declaration ¶ 24.

PLAINTIFF'S RESPONSE: **DISAGREES**. Plaintiff **OBJECTS** in that defendant's authority (the McDonald Declaration) does not identify the specific source of her conclusions. Consequently, plaintiff cannot confirm or deny the validity of the proposed finding.

21. Taxpayer filed a petition for redetermination with the United States Tax Court. McDonald Declaration ¶ 25.

PLAINTIFF'S RESPONSE: AGREES.

22. The resolution of the dispute over taxpayer's 1981 income tax was embodied in a stipulated decision of the Tax Court, dated January 2, 1997, which determined that there was an overpayment of tax with respect to 1981 in the amount of $12,352,648, which had been paid on October 27, 1987 and March 15, 1990 (the dates of the payments of the amounts that had been credited to plaintiff's 1981 accounts as credits from 1980 and 1984, referred to above, used to satisfy the deficiency). Stip. ¶ 13, Stip. Ex.3; McDonald Declaration ¶ 26.

PLAINTIFF'S RESPONSE: **DISAGREES IN PART**. Plaintiff **OBJECTS** to the portion of the proposed finding in parenthesis in that it is unsupported by the record. Defendant has stipulated that the 1991 assessment was paid in part by the transfer from 1980 in the amount

of $986,054.19. Stip. ¶11. As stated in plaintiff's response to proposed finding # 17 above, the Transcript reports that the payment of $986,054.19 was made on February 24, 1984, not October 27, 1987 or March 15, 1990.

23. The overpayment resulted entirely from reversal of virtually all of the carryback recapture. McDonald Declaration ¶ 27.

PLAINTIFF'S RESPONSE: AGREES.

24. Taxpayer originally claimed (and was allowed a refund) of $18,682,973 as the result of carrybacks from 1984 to 1981. Stip. ¶ 8; McDonald Declaration ¶ 28.

PLAINTIFF'S RESPONSE: **DISAGREES**. In this proposed finding, plaintiff does not agree with defendant's characterization of the events. To the extent defendant is referring to the application for a tentative carryback adjustment filed on or about September 15, 1985, plaintiff does not agree with defendant's characterization of the taxpayer's request as being "claimed." To the extent defendant is referring to the Service's tentative adjustment and payment of $18,682,973, plaintiff does not agree with defendant's characterization of the event as "allowed a refund." Plaintiff **OBJECTS** in that it did not stipulate to these terms in its Joint Stipulation of Facts. Stip. ¶ 8. As articulated in Plaintiff's Brief in Support of its Motion for Summary Judgment, and Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment filed contemporaneously with plaintiff's response hereto, plaintiff draws a distinction between the procedural rights afforded a taxpayer by a formal claim for refund versus those attendant an "application" for a tentative carryback adjustment. As a consequence, defendant's characterization of the taxpayer's September 15, 1985 application and the IRS' September 27,

1985 payment as a "claim" and "refund," respectively, may be interpreted as setting out defendant's legal conclusion with respect to a question presented by this case, and is not a matter of fact, but an opinion as to a matter of law. *See, for example, United States v. Feliciano, aka Rude Dog, etc.*, 223 F.3d 102, 121 (2d Cir. 2000).

25. The Service later disallowed $12,448,079 of that amount. Stip. ¶ 11; McDonald Declaration ¶ 29.

PLAINTIFF'S RESPONSE: AGREES.

26. The stipulated Tax Court decision reflected the agreement of taxpayer and the Commissioner that the correct amount of the carryback was $18,587,542 (instead of $18,682,973, a difference of $95,431) and that the Commissioner's reversal (recapture) of $12,448,079 of that carryback was in error to the extent of $12,352,648, resulting in an overpayment in that amount. Stip. ¶ 14; McDonald Declaration ¶ 30.

PLAINTIFF'S RESPONSE: **DISAGREES and OBJECTS.** The proposed finding is incorrect. Whereas the parties have stipulated that the Decision of the Tax Court determined an overpayment in the amount of $12,352,648 after taking into account business credit carrybacks from 1984 (Stip. ¶ 13), the parties did not stipulate to all of the other facts recited in defendant's proposed statement. Plaintiff **OBJECTS** in that it did not stipulate to these facts in the Joint Stipulation of Facts. Further, Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." The amounts recited (in particular the "difference of $95,431") in its proposed finding sets out no matter of fact that is actually material or relevant to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material. Further, on

information and belief, due to other balances in the account, the effective overpayment balance in the 1984 account from March 15, 1985 to September 27, 1985 was not $12,352,648.

27. The adjustment also resulted in the abatement of previously assessed deficiency interest in the amount of $5,531,965.47, for a total overpayment of $17,884,613.47. Stip. ¶ 14; McDonald Declaration ¶ 31.

PLAINTIFF'S RESPONSE: **DISAGREES IN PART**. The proposed finding is incorrect in part. Whereas the parties have stipulated that the Service abated deficiency interest in the amount of ($5,531,965.47)(Stip. ¶ 14), the parties have not stipulated that there was a total overpayment of $17,884,613.47. Plaintiff **OBJECTS** in that it did not stipulate to this latter fact in the Joint Stipulation of Facts. Further, Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." The proposed finding sets out no matter of fact that is actually material or relevant to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material.

28. The overpayment was applied as a credit against plaintiff's 1982 corporate income tax liability on or about May 25, 1997. Stip. ¶ 16; McDonald Declaration ¶ 32.

PLAINTIFF'S RESPONSE: **DISAGREES**. The proposed finding is incorrect. It is not substantiated by the Joint Stipulation of Facts. The parties stipulated that an overpayment in the amount of $11,855,397.47 (not - $17,884,613.47) was transferred on or about May 25, 1997 to the taxpayer's 1982 Federal income tax account. Stip. ¶ 16. Plaintiff **OBJECTS** in that it did not stipulate to the proposed finding. Further, Rule 56(h)(1) requires that a party's proposed findings consist of "material facts." The proposed finding sets out no matter of fact that is

material or relevant to the instant suit. Plaintiff **OBJECTS** to being required to respond to allegations that are not material.

Respectfully submitted,

January 18, 2007

s/Joseph M. Persinger
Joseph M. Persinger
Attorney of Record
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York 10005
Voice: (212) 530-5000
Fax: (212) 822-5072
Email: jpersinger@milbank.com

Attorney for Plaintiff