**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **THE COCA-COLA COMPANY & SUBSIDIARIES,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | **No. 03-1155 T** |
| **v.** | ) | **The Honorable Lawrence J. Block** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**REPLY BRIEF FOR THE UNITED STATES**
**IN SUPPORT OF ITS CROSS-MOTION**
**FOR SUMMARY JUDGMENT**

While all of the events that transpired between the filing of plaintiff's federal corporate income tax return for 1981, and the filing of the complaint in the instant case, are many and confusing, the facts which actually bear upon the question before the Court are few, straightforward, and undisputed by taxpayer:

1. Plaintiff claims that interest was wrongly computed with respect to its 1981 corporate taxes. More specifically, plaintiff claims it is owed interest with respect to an overpayment which existed between March 15, 1985 and September 27, 1985; [1/]

[1/] Plaintiff's Response to Defendant's Cross-Motion for Summary Judgement and Plaintiff's Reply to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, filed January 18, 2007 (hereafter "Pltf. Reply") at 11 (middle of the page).

2. The overpayment arose on March 15, 1985, [2/] the first day that a carryback to 1981 from 1984 was effective in reducing plaintiffs income tax liability for 1981, and persisted until September 27, 1985, the day that overpayment was refunded to plaintiff; [3/]

3. The refund came in response to the filing by plaintiff of a Form 1139, "Corporation Application for a Tentative Refund," in which plaintiff first asserted that there existed tax-reducing attributes from 1984 (specifically, investment tax credits), unused in that year, which plaintiff was entitled to carry back to 1981, thereby reducing plaintiff's tax liability for 1981, which reduction in liability in turn resulted in the overpayment; [4/]

4. Because the overpayment was refunded within 45 days of plaintiff's advising the Commissioner that plaintiff was entitled to it, it was paid without interest, [5/] in accordance with §§ 6611(e) and (f)(4) of the Internal Revenue Code;

5. The Commissioner later disputed the existence of the unused tax credits, and thus disputed their tax-reducing efficacy with respect to 1981, and accordingly reversed their allowance in January 1991, resulting in a deficiency, which was paid by plaintiff; [6/]

---

[2/] Pltf. Reply at 9, first paragraph.

[3/] Plaintiff's Proposed Findings of Uncontroverted Fact (hereafter "PPFF"), ¶ 4. Pltf. Reply at 14, first paragraph. The second two sentences are set out as statements of fact, and in that respect they are correct. Plaintiff nowhere contradicts this series of events, and ultimately only disputes their legal significance.

[4/]PPFF ¶ 4.

[5/] PPFF ¶ 4.

[6/] Pltf. Reply at 16. See also, PPFF ¶ 7. Since the 1985 refund was not made until September 1985, the later-determined deficiency was thought to arise in September 1985, so that in 1991 plaintiff was not charged with deficiency interest for that March-to-September period for which it had previously not been given overpayment interest.

6. Upon Tax Court review of plaintiff's 1981 tax liability, it was determined that the carryback (largely as originally claimed by plaintiff) was proper, and should have been allowed. [7]

7. As a consequence of the Tax Court determination in January 1997, interest in plaintiff's favor was computed on the overpayment when the proper portion of the amount paid by plaintiff was refunded or credited in May 1997. None was due, because the overpayment was credited to periods such that the starting date for such interest was after the ending date for such interest. See, e.g., *AT&T v. United States*, 62 Fed. Cl. 490 (2004). No interest was paid on the overpayment that had existed between March 15, 1985 and September 27, 1985, which had been refunded (without interest) on September 27, 1985. [8]

The issue in the instant case is whether plaintiff is now entitled to be paid interest on the overpayment of its 1981 corporate taxes that existed between March 15, 1985 and September 27, 1985. Such interest might conceivably be due either in conjunction with the refund requested and allowed in 1985, or in conjunction with the refund (actually paid by crediting against other tax liabilities) allowed in 1997 in response to the Tax Court's decision – but neither possibility is tenable: As to the 1985 refund, the statue expressly denies interest for that period; and as to the 1997 refund, the amount refunded had been paid by plaintiff to the Government in 1991, by transfers from other periods, long after the period in 1985 with respect to which plaintiff now seeks additional overpayment interest. No interest was paid on the refund of that overpayment when it was made in 1985. No interest was due because it was paid within 45 days of the time plaintiff first claimed entitlement to it, via the filing of the Form 1139. Plaintiff explains that a Form 1139 is not a "claim for refund," as that term is used in § 7422(a). Indeed, plaintiff sets out

[7] PPFF ¶¶ 9, 11.

[8] Pltf. Reply at 13, n. 16.

the many ways in which Form 1139 differs in form and effect from a "claim for refund." But plaintiff fails to explain why any of those differences is relevant to the instant case, either in law or logic. The Form 1139 certainly represented the assertion by plaintiff of its entitlement to a reduction of its tax liability with respect to 1981, and to the refund or credit of any resulting overpayment. In fact, the Form 1139 resulted in the refund of $18,682,973, [9] paid to plaintiff not in make-believe, tentative money (see Pltf. Reply at 17-18), but in cold, hard cash. And, as a matter of fact, the Code explicitly treats the Form 1139 as a "return" filed for the year generating the loss, for purposes of interest computation, and for purposes of the interest limitation when a refund is made within 45 days of the filing of such a form. § 6611(f)(4)(B)(i).

Plaintiff may be claiming that this 45-day rule does not apply to interest paid on an overpayment refunded in response to a Form 1139, in distinction to a refund paid in response to a "claim for refund." See, e.g., Reply at 17-18. If that is the case, then plaintiff is not disputing the computation of interest on the amount credited to plaintiff as a consequence of the Tax Court's final determination, but is instead disputing the Commissioner's failure to pay interest in the first instance, when the overpayment that existed between March 15, 1985, and the day it was refunded, September 27, 1985. But plaintiff cannot be arguing that, since any suit for the recovery of overpayment interest must be filed within 6 years of the time of scheduling by the Commissioner of the overpayment as to which it is claimed interest was wrongly computed. *General Instrument Corp. v. United States*, 33 Fed.Cl. 4 (1995). And that time – as plaintiff forcefully argues – was well more than 6 years ago.

Plaintiff's argument is premised on the proposition that this "interim overpayment" was not "caused" by the Form 1139 filed in 1985, but instead was "caused" by the Tax Court's final

---

[9] PPFF ¶ 4.

determination, many years later. [10/] But the statute does not speak in terms of the metaphysical (or even legal) "cause" of the tax overpayment, but instead directs simply that no interest be paid if the tax refund is made within 45 days of the taxpayer's claim. And § 6611(f)(4)(B) makes clear that, for interest computation purposes, the Form 1139 is treated as the return or claim for refund first claiming the tax overpayment. The tax refund was made in the instant case within 45 days of plaintiff's claim that plaintiff was entitled to the refund. Plaintiff was accordingly entitled to no interest, and subsequent events have done nothing to change the objective reality of that fixed, unchanged, time sequence, to which the statute refers. *Soo Line R.R. Co. v. United States*, 44 Fed. Cl. 760 (1999). It is equally true that the overpayment credited for plaintiff's benefit following its Tax Court victory is not the overpayment refunded long ago, in 1985, but is instead a refund of amounts paid far later, in 1987 or 1991, in response to the Commissioner's reversal of the of tax credits claimed by plaintiff. [11/] Looked at either way, plaintiff's contention is without merit.

Plaintiff's argument includes multiple fatal anomalies, including two in footnote 16 alone. There, plaintiff insists that what it received in September 1985 was not an "overpayment" (as contemplated by the interest-mandating statute, § 6611(b)(2)), but was instead only an "interim" overpayment. This is a dangerous gambit, since the Internal Revenue Code nowhere

---

[10/] Similarly, plaintiff forcefully insists that the relevant "claim" is that filed in 1991 as a formal claim for refund. While it is not clear to us exactly what point plaintiff seeks to make respecting the interrelationship between that claim for refund (PPFF ¶ 8) and the final determination of its 1981 tax liability via a stipulated decision in the Tax Court (PPFF ¶ 9), in the final analysis, it makes no difference, as we explain in the text. So that there is no misunderstanding, however, we observe that taxpayer's petition to the Tax Court (filed August 1, 1991), was premised on a statutory notice of deficiency, dated May 30, 1991, which determined a deficiency with respect to 1981 in the amount of $6,234,894.

[11/] PPFF ¶¶ 5, 7.

authorizes the payment of interest on "interim" overpayments, but only upon the real thing, and that in § 6611. Either an "interim" overpayment is an overpayment for interest purposes, upon which interest is limited if the refund is made within 45 days, or an "interim" overpayment is *not* an overpayment for interest purposes, in which case no interest at all is authorized by the statute.

In the same footnote, plaintiff carelessly calls attention to the fact that the "final overpayment balance," credited as a consequence of the Tax Court decision, itself bore no interest "because the date of the amount against which that credit was taken (March 15, 1982) preceded the start date of the overpayment (October 27, 1987)." Plaintiff cites *AT&T v. United States*, 62 Fed. Cl. 490 (2004), which in turn relied upon *Marsh & McLennan Cos., Inc. v. United States*, 302 F.3d 1369 (Fed.Cir.2002). But that "date of the amount against which that credit was taken (March 15, 1982)," *not only* preceded the payment date of the amount finally being refunded (October 27, 1987) *but also* "preceded the start date of the overpayment" (March 15, 1985) of what plaintiff refers to as the "interim overpayment," which ought also (by those precedents) bear no interest. Yet this is the very "interim overpayment" upon which plaintiff ostensibly claims overpayment interest in this case. Plaintiff has woven a tangled – and erroneous – web.

Plaintiff's motion for summary judgment should be denied, defendant's cross-motion for summary judgment should be granted, and the complaint dismissed, with prejudice, with all allowable costs assessed against plaintiff.

Respectfully submitted,

/s W. C. Rapp
W. C. RAPP
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 307-0503*
*Fax: (202) 514-9440*
*Email: william.c.rapp2@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*

June 7, 2007

/s David Gustafson
Of Counsel